## CUSTER COUNTY V. TUNLEY *et al.*

1. Where a county treasurer received partial payments on personal taxes, and receipted therefor as treasurer, which he was not authorized to receive, he received them for the county, and not in trust for the parties paying; and hence the sureties were liable therefor on his bond, conditioned that he would faithfully perform the duties of the office, and account for all moneys coming to him as treasurer.

2. The sureties on the bond of a county treasurer for his second term only were liable for moneys received by him during his first term, when, during the second term, he had charged himself with the amount as being paid over to himself as his own successor, thereby admitting the amount to be in his hands.

3. Where a bank refused to surrender a deposit made by a county treasurer, and, in order to recover it, the sureties on his bond agreed that the county might bring suit therefor without losing its right to bring subsequent action against the sureties for "about $700" for certain moneys received and unaccounted for by the treasurer, such agreement did not in any manner fix and limit the amount the county might recover in the subsequent action against the sureties.

4. Sureties on the bond of a county treasurer for the second term only were not liable for moneys received by him during his first term, which he had not charged himself as having received on entering on his second term.

5. The sureties on the bond of a county treasurer are liable for overpayments made by the treasurer to certain school districts, it not being shown that the county received any benefit from the overpayments.

(Opinion filed March 2, 1900.)

Appeal from circuit court, Custer county. Hon. LEVI McGEE, Judge.

Action by Custer county against Benjamin M. Tunley and others to recover upon an official bond. From a judgment in favor of plaintiff for part only of the relief demanded, both parties appeal. Reversed.

*W. E. Benedict,* for plaintiff.

Where a county treasurer has served two terms and upon retiring from office it is discovered that he has misappropriated moneys, it will be presumed in the absence of evidence to the contrary that the misappropriation took place at the end of the last term, and the sureties on his official bond for that term

will be held liable therefor. Hippe v. Johnson, 14 Pac. 833; Boone Co. v. Jones, 2 N. W. 987; Pine Co. v. Willard, 39 N. W. 70.

The board of county commissioners having examined and approved the official bond of the treasurer for his second term, at a date when his second term had begun, in effect found the county funds in his hands at the beginning of his second term, and therefore the sureties on his second term bond are liable therefor. Bruce v. U. S., 17 How. 437; Farrar v. U. S., 5. Pet. 373; Vivian v. Otis, 24 Wis. 518; Board of Education v. Fonda, 77 N. Y. 350.

Where the treasurer in his official capacity received partial payments on personal taxes and failed to account therefor, his sureties are liable. People v. Pennock, 60 N. Y. 421; State v. McFettridge, 54 N. W. 1; 24 Am. &. Eng. Enc. of Law, 894.

The sureties upon the bond are not entitled to any credit for overpayments made by the treasurer, the county not having received any benefit therefrom. Middleton v. State, 22 N. E. 123. The sureties are estopped to deny the entries in the treasurer's books. Boone Co. v. Jones, 2 N. W. 987; Doll v. People, 32 N. E. 413.

*Charles W. Brown*, for defendants.

Where the office of county treasurer is held by the same person for two successive terms, the sureties on his bond for the second term are not liable for moneys which should have been in his hands as such treasurer at the commencement of that term, but which he had in fact converted during his first term. And the sureties are at liberty to show when the defalcation occurred, and are not estopped by the accounts, books, entries, or reports of their principal, from showing the true

date of the default.   Murfree, Off. Bonds, §§ 633, 634; United States v. Eckford, 1 How. 250; United States v. Boyd, 5 How. 31; Vivian v. Otis, 24 Wis. 518; Coons v. The People, 76 Ill. 383; Bissel v. Saxton, 66 N. Y. 55; Supreme Council v. Fidelity etc. Co., 63 Fed. 49; Metz v. State, 8 South. 390; Anaheim Union Water Co. v. Parker, 35 Pac. 1048.   State v. Alsup. 4 S. W. 31; Brandt on Suretyship and Guaranty, § 466.

An account stated between the county and its officers is only *prima facie* evidence and may be impeached for fraud or mistake.   Bispham, Eq. 531, 532; Murfree, Off. Bonds, § 803; 1 Am. & Eng. Enc. Law, 112; Supreme Council v. Fidelity Co., 63 Fed. 50; United States v. Boyd, 5 How. 9.

The sureties on an official bond are, as a general rule, liable only for the official acts of their principal and for money which he is authorized and bound by law to receive in his official capacity as collecting or disbursing agent, and not for that of which he becomes the voluntary custodian, or which is, without authority of law, paid to him.   People v. Pennock, 60 N. Y. 421; Southerland v. Caw, 85 N. Y. 105; Village of Olean v. King, 103 N. Y. 361; Nolley v. Calloway County, 11 Mo. 447; Schloss v. White, 16 Cal. 65; United States v. Hermance, 15 Blatch. 613; United States v. Moore, 4 Myers' Fed. Dec. 117; Brandt Sure. & Guar. §§ 446, 453, 483, 79, 203; Murfree Off. Bonds §§ 462, 540, 682, 723, 724, 783, 204, 710.

The settlement made by the board of county commissioners concludes the county where the amount of a claim is unliquidated at the time of payment or is contingent the payment and acceptance of a part of the whole debt is a good satisfaction. 1 Am. & Eng. Enc. of Law 94, 32; Donoghue v. Woodbury, 6 Cush. 148; Simmons v. Olney, 103 Mass. 33; Easton v. Easton,

112 Mass. 442; Barth v. McArthur 49 Fed. 715; State v. Davis, 75 N. W. 897; Libbey v. Dickey, 27 At. 353; Hasleton v. Dickinson, 1 N. W 551.

CORSON, J. This is an action against Benjamin M. Tunley, formerly treasurer of Custer county, S. D., and the sureties upon his official bond. The judgment was in favor of the plaintiff for the sum of $659.71, and from this judgment both parties appeal,

In 1890 the defendant Tunley was elected county treasurer of the plaintiff county, and was re-elected in 1892, holding the office from January, 1891, to January, 1895. The sureties who are defendants in this action were sureties upon his official bond for the second term, commencing January 3, 1893. At the time the sureties executed the bond in question, the said Tunley had in his hands as county treasurer, as shown by the books in his office and the auditor's office, the sum of $21,009.69. On the trial there was evidence tending to prove, and the referee so found, that during his first term he had received $1,090.70 (which was reduced by order of the court to $631) which was not charged to the treasurer on the records of his office, nor on the records of the auditor's office. These sums, it appears, were received by the treasurer as partial payments from various taxpayers on account of their personal property taxes, and for which receipts were given by the treasurer as such, but not the usual official tax receipts. It further appears that during his second term of office he received in like manner $757.57. These amounts the treasurer had not charged himself with in the official records of his own office, and he was not charged with these sums, or any portion of them, by

the county auditor. It was further found that the treasurer had accounted, in his various settlements during his two terms of office, for $200.12 as received by him from the former treasurer, which in fact he never had received. It further appears that in paying out moneys for the county he made overpayments to the amount of $116.70, for which he was credited by the referee. It further appears that at the expiration of the term of Tunley's office he had in the Bank of Hermosa and the Bank of Hot Springs about $2,600, which said banks claimed to hold for amounts due them from said Tunley. The sureties, being desirous that actions should be commenced against these banks to recover the amounts claimed to be due from them to the county, entered into an agreement with the county by which it was stipulated that the county should bring these actions, without in any manner impairing its claim against them as sureties on Tunley's official bond. These actions were commenced by the county, and the amount due from the banks recovered, and paid to the county. In that agreement was the following: ''It is further agreed that nothing herein contained shall affect the liability, if any, of the said parties of the second part [the sureties] for the payment of the said sum of about $700, so claimed as aforesaid to have been received by said Tunley as partial payments on taxes, it being understood that said county may begin a suit against said parties of the second part to recover said sum of about $700 last named.'' While the amount involved in this case is not large, the questions to be considered are quite important. It is claimed by the sureties: (1) That they are not liable for any of the moneys received by the treasurer as partial payments on personal property taxes, as they were never in fact paid into the county treas-

ury by being charged against the treasurer either in the books of his own office or in those of the county auditor. (2) That, in no event, are they liable for the money received by him as partial payments on personal property taxes during his first term of office, for the reason that the moneys so received, never being charged to him, were not paid over to himself as his own successor, the sureties only being liable for the amount which appeared by his own books and those of the county auditor to have been actually in the treasury at the time they executed the treasurer's bond. (3) The sureties contend that they cannot be held, in any event, for the amount received as partial payments on account of personal property taxes for an amount exceeding "about $700," as that was the amount agreed upon in the contract entered into between them and the county. (4) The sureties claim that they should also be allowed, for errors in accounting and overpayments, the sum of $218.35. (5) That the referee erred in not finding upon all the issues in the case. The county, on its appeal, contends: (1) That the referee's sixth finding of fact, which finds that the treasurer received in partial payments during his first term $1,090.70, should have been accepted and approved, and that the order of the court reducing the same to $631 should be set aside. (2) That the seventh finding of fact of the referee, which finds a credit for overpayments in favor of the treasurer to the amount of $316.82, and which was approved by the trial court, should be disapproved, vacated, and set aside. (3) That the sum of $1,848.27, found by the referee to have been received by Tunley, and not lawfully paid out by him, should measure the liability of the sureties, and is the amount for which the county is entitled to judgment.

The first question presented on the part of the sureties is, are they liable for the taxes received as partial payments on personal property taxes? That question, we think, should be answered in the affirmative. While it is true the statute has not, in terms, authorized the treasurer to receive partial payments of personal property taxes, yet we think, when the treasurer has received them, and given his receipts as treasurer therefor, and holds the amounts so received as county treasurer, his sureties are liable for any misappropriation of the same. The fact that Tunley has not charged himself with the several amounts so received in the regular accounts of his office, nor been charged with the same by the county auditor, will not have the effect of relieving the sureties. The contention that he received the money only in trust for the parties paying the same cannot be sustained in view of the fact that he gave receipts for the same in his official capacity as treasurer. The obligation of the bond signed by his sureties is that he shall faithfully discharge the duties of his office, and shall account for and pay over all moneys that shall come into his hands as such treasurer; and this would include moneys received by him in partial payments of personal property taxes.

The next contention on the part of the sureties is that they, being sureties upon his official bond for the second term, are not liable for the moneys received by the treasurer on account of partial payments of personal property taxes which are not included in the amount shown to be due from him to the county by his own official records and the records in the office of the county auditor at the time they executed his official bond. Ordinarily, this might be true, and, if there was nothing in this case to show that the treasurer had accounted for this money in

his settlements with the county subsequent to the execution of such bond, they would not be liable. But in the case at bar it affirmatively appears that on the 9th day of January, 1893, the treasurer, in a report to the board of county commissioners, shows charged against himself $631 received on account of these taxes. Presumptively, therefore, he paid over to himself as his own successor, this amount, in connection with the amount of $21,009, appearing to be due from him at the end of his former term, as shown by the records in his own office and in the office of the county auditor. We are of the opinion, therefore, that the circuit court properly found that the defendants were liable for the amount so admitted to be in the hands of the county treasurer subsequent to the execution of the bond by the sureties.

The sureties further contend that by virtue of the agreement entered into between themselves and the county on the 18th day of February, 1895, the amount for which they should be liable was fixed at "about $700," and that the county cannot now recover an amount in excess of that sum. But we do not so construe the agreement. The object and purpose of the agreement evidently was to enable the county to bring suits against the two banks where the county treasurer had deposited certain county moneys without releasing the sureties, and was not intended as an account stated between the sureties and the county as to the amount for which they should be held liable. It would seem from the statement contained in the agreement that the sum of "about $700" was made with reference to the amount known at that time to have been collected by the treasurer. We are of the opinion, therefore, that the county is not limited to that amount, and may collect the entire

amount which it may be able to show was collected by the treasurer.

It is further contended on the part of the sureties that the referee should have allowed them, as credit for errors in favor of Tunley, the sum of $218.35. The findings of a referee or of a court will not be disturbed by the appellate court unless they are clearly against the preponderance of the evidence. We are not able to say in this case that there is any preponderance of the evidence against the findings of the referee as to this amount.

The last contention—that the referee did not find upon all the issues—is not tenable, for the reason that his findings seem to be very full, and substantially cover all the grounds involved in the controversy.

It is claimed on the part of the county, in its appeal, that the court erred in reducing the finding of the referee as to the amount of partial payments on personal property taxes received during the treasurer's first term of office from $1,090.70 to $631. But, as we have before indicated, the $631 was the only amount which the treasurer accounted for in his settlements with the county after entering upon his second term, and we are of the opinion that the court below properly held that the sureties upon his official bond for the second term could not be held for a sum exceeding the amount so accounted for by the treasurer.

It is further contended on the part of the county that the referee erred in giving the sureties credit for $200.12, which they claimed was never in fact received by Tunley from his predecessor. We are of the opinion that the county is right in its contention. It clearly appears from the evidence that Tunley, in his reports to the board during the four years he held the

office of treasurer, reported this sum as paid, or, in other words, charged himself with the full amount due from his predecessor, as shown by the books of his office and in the office of the county auditor; and certainly he would be estopped from now showing that he did not receive the full amount so due. The same rule, we think, applies to the sureties upon his official bond  It was his duty to keep correct books of account, and make true reports to the board, and for the faithful performance of these duties the sureties were bound.  This question was very fully considered by the supreme court of Illinois, in 1893, in the case of Doll v. People, 145 Ill. 253, 34 N. E. 413. In that case the sureties sought to show that the treasurer of Clark county had never in fact received from his predecessor $7,000, which the treasurer had charged himself with, and which he had included in his four annual reports to the board of county commissioners.  On the trial of that case these reports, together with the action of the county upon them, and the books containing a record of the transactions of the treasurer during his term of office, which he had turned over to his successor, were all read in evidence on the part of the county. For the purpose of overcoming the force and effect of this evidence, the sureties called certain witnesses, and undertook to impeach this record evidence, and prove that the treasurer did not in fact receive the money from his predecessor, as he had reported; that the reports were false, and that his predecessor was the defaulter.  But the trial court held that the reports of the treasurer and his official record could not be impeached or contradicted, and the supreme court, after discussing the question at length, affirmed the decision of the court below.  City of Chicago v. Gage, 95 Ill. 593; Morley v. Town of Matamora,

78 Ill. 394; Roper v. Trustees, 91 Ill. 518; Longan v. Taylor, 130 Ill. 412, 22 N. E. 745. We are of the opinion, therefore, that the referee erred in finding and crediting these sureties with the said amount of $200.12, and for this error the judgment of the court below must be reversed, and a new trial granted.

Another question that may arise upon a new trial of this case, and that may now properly be decided, is, were the sureties entitled to be credited with the sum of $116, claimed to have been overpaid by the treasurer to Custer City and other school districts? It is not claimed that the county received any benefit from these overpayments, and we fail to see upon what principle the county could be held to sustain the loss. We are of the opinion, therefore, that the referee erred in crediting the sureties with these overpayments. The judgment of the court below is reversed, and a new trial ordered.