STATE OF NORTH DAKOTA, EX REL. BISMARCK TRIBUNE, a Corporation, Appellant, v. JOHN STEEN as the State Auditor of the State of North Dakota, Respondent.

(236 N. W. 251.)

628

Opinion filed April 15, 1931.

*Zuger & Tillotson* and *Joseph J. Ermatinger,* for appellant.

*James Morris,* Attorney General, for respondent.

NUESSLE, J. The relator applied to the district court of Burleigh county for a writ of mandamus to compel the defendant, John Steen, as state auditor, to issue to it a warrant in payment of a claim for printing done for the motor vehicle registration department. The district court after hearing denied the writ. The relator appeals.

The relator holds the contract for state printing, awarded pursuant to the provisions of § 51, Comp. Laws 1913, as amended.

In September, 1929, the registrar of motor vehicles requisitioned the printing commission for registration certificates and other supplies. Pursuant to this requisition the printing commission ordered the supplies from the relator. The relator supplied the order and presented the claim therefor to the printing commission. The commission allowed and approved the claim as made and thereafter it was certified to the state auditor for payment. It was not, however, presented to or approved by the state auditing board. The registrar of motor vehicles received and accepted the supplies. He conceded (as did the attorney

general on argument in this court) that they were of the kind, quantity, and quality as ordered, but protested against the payment of the claim as made, setting forth as the sole reason for his protest that the rate charged for the printing was excessive. The state auditor whose duty it is to issue warrants in payment of proper claims against the state, refused to pay the claim on the ground it had not been approved by the registrar and the state auditing board as required by § 33, chapter 179, Sess. Laws 1927 (the motor vehicle registration act). In that behalf the state auditor contends that under the provisions of said § 33 all claims, including those for printing, payable out of moneys appropriated for the motor vehicle department, must be approved by the registrar and the state auditing board; that, in any event, though the registrar and the state auditing board were not required to pass upon and approve the claim for printing, nevertheless they were required to pass upon and approve the claim in other respects. On the other hand, the relator insists that under the provisions of §§ 72, 73, and 74, Comp. Laws 1913, the printing commission has the exclusive power to approve claims against the state for printing, and that therefore it is entitled to the payment of the claim in the instant case thus approved. The sections of the statute more especially involved are as follows:

Section 72, Comp. Laws 1913:

"Commissioners have charge of all printing paid for by the State. The commissioners shall have charge of all the printing and binding required to be done for the several departments of the government; receive the proper orders for the same, and have the same properly executed according to law; keep a record of all the work ordered from the several contractors under the law, and of all printing and binding ordered by the legislative assembly; examine and supervise the work of printing in progress, and see that it is executed with due economy to the state; make or authorize to be made the necessary indices for the volumes of the executive documents and reports; examine all accounts for printing and binding that may be presented, and adjust the same according to the terms of the contracts and in accordance with law and such rulings as may be determined by the commissioners. No printing required by any state officer as provided under this article shall be paid for unless the same shall have first been authorized by the legislative assembly or by the commissioners of printing."

Section 74, Comp. Laws 1913:

"Printing accounts, how certified and paid. When the account of any contractor under this article shall have been adjusted, the commissioners shall certify the same to the state auditor, who on receipt thereof shall draw his warrant upon the state treasurer for the amount thereof; provided, that in the current execution of such contracts the commissioners are empowered, in their discretion, to deliver to such contractor a certificate for an amount not exceeding seventy-five per cent of completed work upon the contractor filing with the commissioners a statement of the amount of work done, for which amount the state auditor shall give his warrant upon the state treasurer to such contractor."

Section 33, chapter 179, Sess. Laws 1927:

"All claims for moneys expended by the Motor Vehicle Registration Department shall be paid out of the fund set aside for that Department by the State Treasurer upon the presentation of properly prepared vouchers approved by the State Auditing Board and approved by the Registrar."

The legislature has definitely prescribed the manner and method in which state printing must be provided. It has created a commission charged with the duty of furnishing all such printing as the state may require, and prescribed the powers and duties of this commission. See article 4, chapter 3, Political Code, §§ 45 to 108, inclusive, Comp. Laws 1913, as amended, and particularly §§ 72, 73, 74, and 101 thereof. It has provided for the employment by the printing commission of an expert familiar with all classes of printing and other matters pertaining to the performance of the duties of the commission. See §§ 56, Comp. Laws 1913 and 375b3, Supplement. These statutes in their original form, or as amended, have been in effect since statehood. They clearly evidence a legislative intent to place the direction and supervision of the state's printing in the hands of a single commission, which shall have the assistance and advice of an expert in such matters. They likewise evidence an intent that all bills for printing done shall be passed upon and approved by the commission. On the other hand, § 375, Comp. Laws 1913, was enacted as chapter 33, Sess. Laws 1901. As originally enacted this section required that all claims against the state before payment be audited and approved by

the state auditing board. It is still in effect, though amended, so as to except from its provisions such claims as are "specifically excepted by law." See § 375, Supplement. Though the motor vehicle registration act clearly contemplates that printing and printed matter will be required for the functioning of the registration department (see § 3(b) thereof), it does not necessarily follow (though it may be so argued) that at the time the act was passed no consideration was given to the fact that provision already existed controlling the manner in which claims for such printing should be approved and paid. However this may be, it is clear that the framers of the act did have in mind the general statute above referred to requiring that claims against the state be audited and approved by the state auditing board. And so in § 33, supra, they provided for the audit and approval of all claims to be paid from moneys appropriated for the motor vehicle department. As a consequence, if this section affects claims for printing, it is in conflict with the provisions of §§ 72 and 74, Comp. Laws 1913, supra. And this is the ground of the auditor's first contention.

However, § 33 is general in its nature. It provides generally for the payment of claims against the motor vehicle registration department. The printing statutes are special in their nature. They deal with a particular subject and provide for the payment in a particular and specific manner of all claims for printing. It is true that the motor vehicle registration act is a later enactment. But it is general in its nature with respect to the matter of payment of claims incurred and contains no express repeal. A long continued legislative policy differentiates the manner of payment of claims for printing from the manner of payment of claims generally against the state. Furthermore, neither the registrar nor the members of the state auditing board are necessarily expert printers, qualified to pass upon technical questions that may arise in the construction of a printing contract and its application to any work that may be done under it, while on the other hand, the printing commission has the advantage of the knowledge and skill of an expert in such matters. So it seems to us that the legislature must be held to have intended, consistent both with the exception as contained in § 375, Supplement, and with the existing provisions relating to the payment of claims for printing, that § 33, supra, should apply only to claims against the motor vehicle registration department

not within the special exception of the printing statutes. This being so, the approval of the motor vehicle registration department and of the state auditing board was not essential to the payment of the claim for printing in itself. Even so, the relator has not made its case. The rate to be charged for printing was fixed by relator's contract with the state. The printing commission applied this contract rate to the registrar's requisition. As to the result determined by the commission, the registrar and the auditing board had nothing to say. Though they had no discretion with respect to the rate that should be charged for such printing as might be requisitioned, nevertheless their approval was required in so far as the kind, character and quantity of the supplies thus requisitioned and provided were concerned. Here, it appears from his indorsement upon the relator's bill, that the registrar received and accepted the supplies as ordered. He made no objection on account of their kind, character, or quantity. He objected to the relator's claim solely on the ground that the rate charged for the printing was excessive. This was a matter as to which he had nothing to say. But the state auditing board was also required to pass upon and approve the claim as a condition precedent to payment. The claim was not approved by this board. In fact it never was presented to the board. The relator seeks to coerce payment of its claim by mandamus. To entitle it to this relief it must show a clear legal right thereto. Cary v. Morton County, 57 N. D. 700, 223 N. W. 928; State ex rel. Minot v. Willis, 18 N. D. 76, 118 N. W. 820. It has not done so. It follows that the judgment of the district court denying the writ and dismissing the application was right and must be affirmed, unless the statute is subject to the constitutional challenge interposed by the relator. However, this imposes no particular hardship upon the relator. It is not remediless. It has its remedy in a proper action. See § 8175, Comp. Laws 1913. It should have resorted to this remedy rather than to mandamus.

The relator contends in this court, though the point does not seem to have been raised in the court below, that given this meaning § 33 of the motor vehicle act is rendered unconstitutional. The relator's contention as set forth in its brief is that the section is unconstitutional because it attempts to delegate legislative power. On argument, however, counsel for relator, apparently abandoning this position, argued

that the act was unconstitutional because it contravened the provisions of § 61 of the constitution requiring that no bill shall embrace more than one subject, which shall be expressed in its title.

In any event, we think that neither contention so made is sound. Section 33 does provide that claims against the motor vehicle registration department shall be paid out of the fund set apart for that department by the state treasurer. The relator insists that this constitutes a delegation of legislative power in that the state treasurer is thereby empowered to make the appropriation for the department. It seems to us, however, that this contention is based upon a misconception of the provision. The section merely refers to the fund out of which claims against the department shall be paid—the fund created by the state treasurer consequent on appropriation therefor by the legislature. Surely this was the thought of the framers of the act. Chapter 179, supra, was enacted in 1927. The same legislature by chapter 68, Sess. Laws 1927, made an appropriation for the motor vehicle registration department out of funds collected by that department. Again in 1929 the legislature by chapter 36, Sess. Laws 1929, made a similar appropriation for the succeeding biennium. Clearly the act is not subject to the challenge of unconstitutionality in this respect.

Section 61 of the constitution provides that no bill "shall embrace more than one subject, which shall be expressed in its title. . . ." The relator challenges the constitutionality of the motor vehicle act on the ground that it contravenes this section. An examination of the act discloses that its subject is single—the taxing and licensing of motor vehicles. And this subject is, in so many words, expressed in the title. It is true that the act provides for the creation of a department of registration; for the appointment of a registrar and defines his powers and duties; for the distribution of the fees received; for the payment of obligations incurred; and for numerous other incidental matters. All of these are germane to the single subject of the act and calculated only to effect and facilitate its purpose. The fact that there is no particular expression in the title with respect to the payment of obligations incurred by the department is not fatal to the act. As something merely auxiliary to its object or purpose this need not be expressed. See State ex rel. Kol v. North Dakota Children's Home

Soc. 10 N. D. 493, 88 N. W. 273; Eaton v. Guarantee Co. of N. D. 11 N. D. 79, 88 N. W. 1029; Cooley, Const. Lim. 5th ed. pages 170, et seq. It is clear there can be no question as to the validity of the act as against this challenge.

Affirmed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.