[File No. 6770.]

WARD COUNTY, a Municipal Corporation and Political Subdivision of the State of North Dakota, Respondent, v. B. A. BALERUD, A. G. Torgerson, E. A. Donnelly and Bertel Jacobsen, and State Bonding Fund of the State of North Dakota, Appellants.

(5 NW(2d) 425.)

174

Opinion filed August 19, 1942.

*Alvin C. Strutz,* Attorney General, *P. O. Sathre* and *C. E. Brace,* Assistant Attorneys General, for appellant State Bonding Fund.

*O. B. Herigstad,* for appellants Balerud, Torgerson & Donnelly.

*Halvor L. Halvorson,* for appellant Jacobsen.

*Ben A. Johnson,* State's Attorney, *B. A. Dickinson,* Assistant State's Attorney, and *Paul Campbell,* for respondent.

CHRISTIANSON, J.   The plaintiff, Ward county, brought this action against the county auditor and county treasurer, and county commissioners, and the State Bonding Fund, as surety on the official bonds of such county officers, to recover damages for the alleged breach of official duty on the part of such county officers incident to the issuance and delivery of certain refunding bonds of the plaintiff county.   The complaint alleges that the defendant, Balerud, was the county treasurer, the defendant, Torgerson, was the county auditor, and the defendants, Donnelly and Jacobsen, were county commissioners of said plaintiff county, and the State Bonding Fund was the surety on the official bonds of these four defendants, at the time the alleged wrongful acts were committed.   The defendants, Balerud, Torgerson, and Donnelly, joined in a general demurrer to the complaint.   The defendants, Jacobsen and State Bonding Fund, interposed separate demurrers on the same

ground.    The demurrers were overruled, and the defendants have appealed.

This action is predicated upon chapter 195, Laws 1935, relating to funding and refunding existing indebtedness of municipalities.    Such statute provides that "a municipality may issue bonds under the provisions of this act for the purpose of funding and refunding its existing indebtedness at any time prior to May 1, 1937."    The term "municipality" is defined to include a "county;" and the term "governing body" is defined to include "a board of county commissioners."    Id. § 1.    The act provides that "any municipality may by resolution of the governing body propose or accept and adopt a plan for funding and refunding floating indebtedness and/or bonded indebtedness or any part thereof existing prior to January 1, 1937.    Such resolution shall recite the plan in detail and contain such provisions not inconsistent with this act as shall be found to be for the best interests of the municipality, its creditors, and its taxpayers."    Id. § 2.

"Such resolution must list, or refer to a document on file in the office of the recording officer of the municipality which lists all indebtedness to be funded or refunded thereunder with sufficient details to identify the obligations referred to, and if the governing body so directs the recording officer shall cause to be published in one issue of an official newspaper or other newspaper designated by the governing body a notice of the filing of such plan and list and a statement that notice is given pursuant to this section."    Id. § 3.

"Upon any plan becoming effective according to its provisions, the municipality may sell or exchange the bonds described therein.    The bonds shall be issued upon authority of a resolution adopted by majority vote of the governing body without submitting the matter to vote of the qualified voters, and such resolution and all proceedings respecting the plan or the bond issue shall not be subject to referendum vote, nor shall it be necessary that the plan be submitted to the board of budget review in the manner required by law for other bond issues."    Id. § 4.

The Act further provides:    "Bonds issued hereunder may be sold for cash or may be exchanged for outstanding bonds or other indebtedness, or part sold and part exchanged, but none shall be sold or exchanged upon such terms that the annual interest cost of the proceeds, computed

to maturities of the bonds of the series according to standard tables of bond values now in general nation-wide use by financial institutions and insurance companies, will be more than the interest rate on the bonds or other indebtedness refunded thereby, and not to exceed in any case six (6) per cent per annum. The officers may use the proceeds of bonds sold to purchase the outstanding bonds, for the refunding of which such bonds were issued, at the best price obtainable, not exceeding par and accrued interest to date of purchase, or may use such proceeds to pay a certain percentage of all bonds or other indebtedness surrendered for exchange and deliver bonds in exchange for the remainder of said bonds or indebtedness. Prior to or contemporaneously with the delivery of bonds, an equal par value of outstanding bonds or other indebtedness shall be surrendered and cancelled. In so far as any exchanges are made, the outstanding obligations shall be taken at not more than face amount with accrued interest and the bonds delivered shall be valued at not less than the face amount with accrued interest." Id. § 5.

The complaint alleges that in 1935 the board of county commissioners of the plaintiff county, proceeding under said chapter 195, Laws 1935, by resolution proposed and adopted a plan for the funding of certain indebtedness of the county, shown upon a list prepared by, and filed in the office of, the county auditor, aggregating in all the sum of $195,-000; that such resolution provided for the issuance of the bonds of said plaintiff county in that amount and directed the county auditor to give notice by publication in one issue of the offical newspaper of the county "that a plan for refunding the outstanding indebtedness of the county of Ward by the issuance of Funding Bonds in the principal amount of said indebtedness, but bearing a lower rate of interest, has been proposed and adopted by the board of county commissioners of said county by a resolution adopted August 8, 1935, and filed and recorded in my office. The indebtedness to be refunded is set forth in the list thereof on file in my office, to which reference is hereby made for a description thereof. This notice is given pursuant to the provisions of chapter 195, Sessions Laws of North Dakota, of 1935, and by order of the board of county commissioners."

The complaint further alleges that thereafter the bonds of said plaintiff county were issued in the total sum of $195,000, in accordance with

the plan proposed and adopted, and that the defendants, county commissioners, treasurer and auditor, delivered such bonds and received therefor the sum of $182,421.17 and no more. That the said defendants, county commissioners, treasurer and auditor, "did not, prior to or contemporaneous with the delivery of the said bonds, or at all, pay and cancel, or cause to be paid and cancelled, from the proceeds and moneys received from the sale and delivery of the said bonds" the indebtedness shown upon the list on file in the office of the county auditor and did not cause to be surrendered any of the warrants or other evidences of indebtedness of the county shown in such list of an equal par value with the bonds delivered by them or of any greater value than the sum of $182,421.17. That the said county commissioners by resolution adopted October 17, 1935, directed the transfer of certain moneys from the General Fund and the Poor Fund of the county, and that these moneys and certain other moneys of the county, aggregating in all $12,739.23, were diverted from the purposes for which they had been raised and appropriated, and were utilized to pay the warrants and other evidences of indebtedness of the county shown on the list filed in the office of the county auditor remaining unpaid after the expenditure of the said $182,739.23, the proceeds of said bond issue; and that as a result the said county commissioners and the county auditor and the county treasurer caused to be paid out $12,739.23 of the county's fund in violation of law.

It is further alleged that in order to effect the sale and delivery of the said $195,000 bonds, hereinbefore referred to, and secure the proceeds from the sale thereof, the said county commissioners, county auditor and county treasurer caused to be represented and certified that the county auditor and treasurer with the proceeds from the sale of said bonds had paid and cancelled county warrants, and other evidences of indebtedness shown on the list or document filed in the office of the county auditor, in the aggregate sum of $195,160.40.

It is further alleged that one Olson, one Amick and one Kurtz, Jr., residents and taxpayers in said plaintiff county, on December 28, 1939, caused to be filed with the commissioner of insurance of North Dakota a claim in behalf of the plaintiff, Ward county, and against the defend-

ant, State Bonding Fund, as surety on the official bonds of the said county commissioners, county auditor and county treasurer, for the sum so illegally diverted and expended; that no claim against the Bonding Fund, on behalf of Ward county, for and on account of defaults and wrongful acts of the defendants, had ever been filed with the commissioner of insurance against the said State Bonding Fund prior to that time and that the officers of that county had failed, refused and neglected to make or file such claim.

It is further alleged that the said three taxpayers who filed such claim on December 28, 1939, had no notice or knowledge of said defaults or wrongful acts of the defendants until they were informed thereof by one Campbell, who, on or about December 1, 1939, had examined the records relating to such bond issue, and then and there discovered the defaults and wrongful acts of the defendants.

It is further alleged that the claim filed against the defendant State Bonding Fund has not been paid, but that the said defendant has failed, refused and neglected to allow or pay the same or any part thereof.

As said, there was no separate demurrer by either the county auditor or the county treasurer. They joined the county commissioners in a general demurrer. Hence, we need only consider whether the complaint states a cause of action against the commissioners; for if it does it was proper to overrule the demurrer as to all the parties who joined in it. 49 CJ pp. 428, 433.

We are of the opinion that the trial court was correct in overruling the demurrers interposed by the county commissioners and the auditor and the treasurer; but that it was in error in overruling the demurrer of the State Bonding Fund.

The appellants contend that the complaint fails to state a cause of action against any of the defendants, county officers:—

1. Because it fails to show that any county funds were paid out contrary to law; that on the contrary it shows that the disbursements of county funds were in conformity with the law; that said chapter 195, Laws 1935, does not require that debts listed be discharged and cancelled in an amount at least equal to the face amount of the refunding bonds, but that it merely requires that debts so listed be discharged and

cancelled in an amount equal to the proceeds received from the sale of the refunding bonds; and that the action of the county commissioners in transferring funds from the general and other county funds, and utilizing the same to pay the debts remaining unpaid after the expenditure of the proceeds of the bond issue was proper and in conformity with the law.

2. That even though the action was without authority of law, the complaint fails to show that plaintiff was injured thereby.

These contentions are not well founded.

Chapter 195, Laws 1935, provides for the funding or refunding of all or part of the indebtedness of counties (and other political bodies to which it is made applicable). It requires as a basis for a bond issue a definite plan, and the resolution proposing or adopting the plan must list all indebtedness to be funded or refunded thereunder, or refer to a document on file in the office of the recording officer of the municipality which lists such indebtedness. The Act gives to the governing board wide powers in accomplishing the funding or refunding sought to be accomplished. Thus, bonds issued "may be sold for cash or may be exchanged for outstanding bonds or other indebtedness, or part sold and part exchanged." But, the Act also prescribes definite restrictions designed to assure that as a result of the funding or refunding the financial burdens of the municipality shall in no case be increased, but if possible decreased. The Act provides that "none of the bonds shall be sold or exchanged upon such terms that the annual interest cost of the proceeds, computed to maturities of the bonds of the series according to standard tables of bond values now in general use by financial institutions and insurance companies, will be more than the interest rate on the bonds or other indebtedness refunded thereby," and in no event in excess of 6 per cent per annum. "The officers may use the proceeds of bonds sold to purchase the outstanding bonds, for the refunding of which such bonds were issued, at the best price obtainable, not exceeding par and accrued interest to date of purchase;" but "prior to or contemporaneously with the delivery of bonds, an equal par value of outstanding bonds or other indebtedness shall be surrendered and cancelled. In so far as any exchanges are made, the outstanding obligations shall be taken at not more than face amount with accrued interest and the

bonds delivered shall be valued at not less than the face amount with accrued interest." Section 5. The last quoted provision is clear and specific. It is in harmony with the preceding provisions, and authorizes the delivery of bonds only on the condition that prior to or contemporaneously with the delivery of bonds there is discharged and cancelled an equal par value of the indebtedness to be funded or refunded by the bond issue.

It was clearly the intent of the lawmakers that for every dollar of the face amount or par value of the bonds issued and delivered by a county, pursuant to said chapter 195, Laws 1935, there should be a decrease in the amount of the indebtedness of the county to be funded or refunded in at least an equal amount.

According to the allegations in the complaint in this case, the bonds in question here were delivered in disregard or violation of this statutory requirement. According to such allegations, the county commissioners caused $195,000 of bonds to be delivered without receiving the surrender and cancellation of an equal amount of county warrants and other evidences of indebtedness, which, according to provisions of the plan and of the statute, the bonds were intended to fund. On the contrary, the face amount of the bonds delivered exceeded the amount of the face value of the debts of the county that were surrendered and cancelled by the proceeds of said $195,000 of bonds by $12,739.23, and in order to make up this deficit and cause to be discharged and surrendered the remainder of the county warrants and certificates of indebtedness, which, according to the plan the bonds were intended and required to discharge, the county commissioners diverted the amount of such deficit from other county funds.

Appellants argue however that the sum so paid by the county was not in fact a deficit, and was not in fact paid out for the discharge of such warrants and other evidences of indebtedness; but that the sum so paid was in fact a commission or compensation which the county paid to a broker through whom the bonds were sold and that the county commissioners had authority to arrange for such services and to make payment. The argument thus advanced has no applicability in this case. The complaint does not show the payment of any compensation or commission to a broker. It shows that the moneys paid were expended to

pay the indebtedness remaining unpaid after the proceeds of the refunding bonds had all been expended. Whether the county commissioners had authority to enter into an arrangement for the payment of a commission or compensation to a broker and to make such payment out of the general and other funds of the county is a question not involved here, and of course is not determined.

It is further contended that in any event the complaint does not show that any injury resulted from the action of the county commissioners and that for aught that appears such action, even though unauthorized, may have resulted in actual benefit to the county. It is argued that the warrants bore a larger rate of interest than the refunding bonds and that the actions of the county commissioners probably would and did result in gain to the county. This argument, also, is not applicable here. The complaint does not show the facts upon which appellants' argument purports to be predicated. The complaint does show the payment of the sum of $12,739.23 in excess of that which the plan provided and which the statute directed should be paid for the surrender and cancellation of the indebtedness of the County that was specified in the funding plan. These allegations therefore show prima facie that the county has been injured to that extent. If there are facts which will controvert the facts alleged or the inferences reasonably to be drawn from them, or to show that the plaintiff in fact sustained no injury, they do not appear in the complaint, and, if available must be set forth by way of defense.

The State Bonding Fund contends that the complaint not only fails to state facts sufficient to constitute a cause of action against it as surety upon the official bonds of the several county officers, but that it affirmatively shows that no such cause of action exists.

The liability of the State Bonding Fund as surety upon official bonds is fixed by statute. Laws 1919, chap. 158; 1925 Supp. §§ 200b1-200b22. The statute provides:

"The state and each political subdivision, as the case may be, shall be insured in said state bonding fund according to the provisions of this act, automatically without issue of any bond or further action on the part of said commissioner. The provisions of this act and of any statute requiring a bond, shall constitute the bond of each and every

182

public employee' for the purpose of any law of this state requiring such bond and shall constitute the entire contract between the state bonding fund and the state or its political subdivisions respectively as the obligee in any such bond." Laws 1919, Chap. 158, § 5; 1925 Supp. § 200b5.

"The condition of such bond shall be that such public employee, as principal, shall faithfully and impartially discharge and perform the duties of his said office or employment including such duties as are or may be imposed upon him by law, and shall render a true account of all moneys and property of every kind that shall come into his hands as such public employee, and pay over and deliver the same according to law." Laws 1919, chap. 158, § 6; 1925 Supp. § 200b6.

"Immediately upon, and in no event later than sixty days after, the discovery of any default or wrongful act on the part of any public employee for which the state bonding fund is or may become liable, the state auditor, county auditor, city auditor, village, township or school district clerk or the treasurer in case such officer is the auditor or clerk, and any other officer having supervision of such public employee shall, and any person injured by' such default or wrongful act may, file with the commissioner a claim against the state bonding fund. Such claim shall contain an abstract of the facts upon which it is based, and shall be verified by the claimant or by some one in his or its behalf." Laws 1919, chap. 158, § 7; 1925 Supp. § 2007b.

"All claims against the state bonding fund shall be audited by the board consisting of the commissioner of insurance, the state examiner, and the attorney general, and such persons are hereby created a board to audit all claims arising under this act. . . . No action shall be maintained against the state bonding fund upon any claim whatever, until the claim has been first presented for allowance as hereinbefore provided, and allowance thereof refused; provided, however, that the neglect or refusal of the board of audit to act upon any claim for a period of sixty days after its presentation for allowance, shall be deemed a refusal of the claim." Laws 1919, chap. 158, § 9; 1925 Supp. § 200b9.

The requirement that a claim against the state bonding fund shall be filed with the commissioner of insurance not later than sixty days after the discovery of any default or wrongful act on the part of the public

officer or employee is a condition precedent to the right of recovery. Compliance with this requirement is mandatory, and a complaint which fails to show such compliance does not state a cause of action. Felch v. Olsness, 53 ND 18, 204 NW 848; Madden .v. Dunbar, 52 ND 65, 201 NW 988.

The breach of duty on the part of the county officers, charged to have been committed in this case, gave rise to a claim in favor of Ward county against the State Bonding Fund. Under the plain language of the statute, it was incumbent upon the county to file claim for compensation with the commissioner of insurance within sixty days after the discovery of the alleged default or wrongful act which constitutes the ground for the claim. Such was the contract between the county and the State Bonding Fund.

The provision requiring that a claim be filed within a prescribed time is a vital one. The purpose of the provision was to require prompt action by the claimant upon discovery of any wrongful act or default "for which the State Bonding Fund is or may become liable," to the end that the State Bonding Fund might be informed of the facts upon which the claimant bases his demand for indemnity as soon as possible after the claimant has discovered the alleged default or wrongful act on the part of the public employee, so that investigation into the merits of the claim might be facilitated, and the State Bonding Fund might take appropriate action to protect the interests of the Fund and of the public. Madden v. Dunbar, 52 ND 65, 71, 201 NW 988, 990.

The complaint in this case shows affirmatively that the county of Ward has not filed a claim against the commissioner of insurance at all. The only claim alleged to have been filed is one filed by three resident taxpayers of the county, who it is alleged filed a claim in behalf of the county on December 28, 1939. There is no allegation as to when the county discovered the alleged wrongful acts which form the basis for the claim for indemnity. The only allegation with respect to such discovery is that the said three taxpayers who filed the claim "had no notice or knowledge of said defaults and wrongful acts" until they were informed thereof by said Campbell on or about December 16, 1939. There is no charge that the facts were suppressed. According to the allegations in the complaint, the county commissioners passed formal

resolution providing for the transfer of moneys from the general and the poor funds of the county to be utilized to pay the indebtedness that had not been paid off by the proceeds of the bonds. It must be presumed that such resolution was published as part of the official proceedings of the board of county commissioners, and there is no charge that it was not.

The statute provides for the mode of presentation of a claim by a County against the State Bonding Fund. It makes no provision for the presentation of such claim by a taxpayer either as a representative of taxpayers, or as a representative of the county. If a taxpayer has authority to present a claim in behalf of the county, then there may be presented in any case as many and varied claims as there are taxpayers. If the officers charged with administering the State Bonding Fund are to be required to investigate claims presented by individual taxpayers, who assume to represent and act for the county, then administrative burdens and expense would naturally be increased.

If the requirement that a claim must be filed within sixty days after discovery of default or wrongful act means that in case the officers of a county, whose duty it is to file a claim, fail to do so, any taxpayer may file a claim in behalf of the county within sixty days after such taxpayer makes discovery of the default or wrongful act, then there would be practically an unlimited time for filing claims, and the very purpose sought to be accomplished by the provision limiting the time within which claims may be filed would be set at naught.

A county is a legal entity. It may contract. It may sue and be sued. The legislature has prescribed the terms of the contract between the State Bonding Fund and a county where an officer of the county is bonded by the Fund. The rights of the county and the liability of the State Bonding Fund are measured and limited by such contract. The court has no power to add to or detract from the contract.

The complaint in this case shows affirmatively that the plaintiff county, failed to file a claim as required by the statute. This being so, the complaint does not state a cause of action against the State Bonding Fund.

The order appealed from is affirmed as to the appellants Balerud Torgerson, Donnelly and Jacobsen; but the order is reversed, and the

action is ordered to be dismissed, as to the defendant, State Bonding Fund.

BURR, Ch. J., and MORRIS, BURKE, and NUESSLE, JJ., concur.