MORTON COUNTY, a public corporation,
Plaintiff and Respondent,

v.

Lawrence M. TAVIS and A. J. Jensen, State
Commissioner of Insurance and Adminis-
trator of the State Bonding Fund of the
State of North Dakota, Defendants,
and

A. J. Jensen, State Commissioner of Insur-
ance and Administrator of the State Bond-
ing Fund of the State of North Dakota,
Defendant and Appellant.

MORTON COUNTY, a public corporation,
Plaintiff and Respondent,

v.

Lawrence M. TAVIS, Bernard M. Porter,
and A. J. Jensen, State Commissioner of
Insurance and Administrator of the State
Bonding Fund of the State of North Da-
kota, Defendants,
and

A. J. Jensen, State Commissioner of Insur-
ance and Administrator of the State Bond-
ing Fund of the State of North Dakota,
Defendant and Appellant.

Nos. 7465, 7464.

Supreme Court of North Dakota.

Sept. 30, 1954.

Paul Benson, Atty. Gen., T. H. H. Thoresen, Asst. Atty. Gen., Frank J. Kosanda, Sp. Asst. Atty. Gen., for defendant and appellant.

C. J. Schauss, State's Atty., Kelsch & Scanlon, Sp. Counsel, Mandan, for plaintiff and respondent.

MORRIS, Chief Justice.

On March 8, 1954, Morton County recovered a judgment against Lawrence M. Tavis and A. J. Jensen, State Commissioner of Insurance and administrator of the State Bonding Fund of the State of North Dakota, upon two causes of action for principal, interest, and costs amounting to $25,500.61, and upon the same date recovered another judgment in a separate suit against the same defendants upon six causes of action for $120,243.55. In the second suit one Bernard M. Porter was named as a defendant but was never served. Tavis defaulted in both actions. From the judgments so entered separate appeals have been taken. The

cases were by stipulation consolidated for trial and tried together in the district court. They were briefed and argued together in this court. Since the facts in these cases are similar and the controlling principles of law are identical, we consider both appeals in one opinion.

In May 1931, Lawrence M. Tavis became treasurer of Morton County and Bernard M. Porter became his deputy. They alternated in holding these respective offices during various subsequent periods, one being treasurer and the other his deputy. During that time the county treasurer of Morton County was bonded by the State Bonding Fund under the provisions of the State Bonding Fund Law which was originally Chapter 158 SLND 1919 and is now Chapter 26-23 NDRC 1943. During the period from May 1931 to July 1952 Tavis and Porter conspired with each other to embezzle and did embezzle from Morton County the sum of $209,691.58 during their respective terms as county treasurer as follows: May 1931 to May 1933, Tavis treasurer, Porter deputy, $13,807.42; May 1933 to May 1935, Porter treasurer, Tavis deputy, $18,166.08; May 1935 to May 1937, Porter treasurer, Tavis deputy, $1,969.88; May 1937 to May 1939, Tavis treasurer, Porter deputy, $4,181.61; May 1939 to May 1941, Tavis treasurer, Porter deputy, $6,057.41; May 1941 to May 1943, Porter treasurer, Tavis deputy, $68,984.98; May 1943 to May 1945, Tavis treasurer alone, $16,155; May 1945 to May 1947, Tavis treasurer alone, $11,062.35; May 1947 to May 1949, Tavis treasurer alone, $56,709.62; May 1949 to May 1951, Tavis treasurer alone, $12,597.23. The above embezzlements are established by stipulation of the parties.

The embezzlements of Tavis and Porter were not discovered by the board of county commissioners of Morton County until on or about July 8, 1952. Claims representing the above amounts were filed with the defendant state commissioner of insurance within sixty days after the discovery of the embezzlements. The commissioner admitted liability upon all claims that were less than six years old and paid to Morton County the amount thereof in the sum of $72,526.-93 but refused to pay the balance of $137,-164.65. To recover this amount these actions were brought on June 11, 1953. The insurance commissioner answered, alleging that the causes of action set forth in the complaint did not accrue within six years before the commencement of the actions. The plaintiff replied, setting up an estoppel challenging the right of the defendant to plead and rely upon the six-year statute of limitations as a defense, the challenge being based upon the ground that Tavis and Porter, as public employees, fraudulently concealed, secreted, and suppressed the evidence of their defalcations to avoid detection. Thus there were presented to the trial court two issues. The first is: Does the six-year statute of limitations, Section 28-0116 NDRC 1943, bar recovery from the State Bonding Fund for an embezzlement that occurred more than six years prior to the commencement of an action against the state commissioner of insurance? The second issue is: If the statute does apply, is the defendant insurance commissioner estopped by the facts in this case from asserting the statute of limitations as a defense?

It is suggested that this suit may be considered an action for relief on the ground of fraud and is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud. All of these matters come within the purview of Section 28-0116 NDRC 1943, the applicable subdivisions of which provide:

"The following actions must be commenced within six years after the cause of action has accrued:

"1. An action upon a contract, obligation, or liability, express or implied, subject to the provisions of section 28-0115;

"2. An action upon a liability created by statute, other than a penalty or forfeiture, when not otherwise expressly provided; * * *

"6. An action for relief on the ground of fraud in all cases both at law and in equity, the cause of action in such case not to be deemed to have ac-

crued until the discovery by the aggrieved party of the facts constituting the fraud; * * *."

The first position of the appellant is that the obligation of the State Bonding Fund involved in this case, although based upon a statute, is nevertheless contractual, a view that is supported by Clark County v. Bergstresser, 63 S.D. 121, 257 N.W. 44. The appellant further argues that if the obligation of the State Bonding Fund is not contractual, then it is an action upon a liability created by statute which comes within subdivision 2 of Section 28–0116 NDRC 1943 and is, in any event, subject to the general statutory limitation of six years. We need not concern ourselves with whether the obligation of the State Bonding Fund is contractual or statutory, for the same period of limitation applies to either. A collection of cases dealing with these two theories of liability may be found in the annotation 32 A.L.R.2d 1240. The real question here is whether any of the provisions of the general six-year statute of limitations, Section 28–0116, apply.

The respondent contends that Section 28–0116 NDRC 1943 is a general statute of limitations; that the bonding fund law contains its own special statute of limitations which applies to all actions coming within its provisions to the exclusion of the general statute, Section 28–0116. To that contention we now devote our attention.

The State Bonding Fund was established by Chapter 62 SLND 1915. Chapter 158 SLND 1919, while purporting to amend and reenact the 1915 law, is in fact a comprehensive and complete statute establishing a State Bonding Fund under the management of the commissioner of insurance. The latter act is now Chapter 26–23 NDRC 1943, the pertinent sections of which provide:

26–2308. "The public employees of the state and each political subdivision thereof, as the case may be, shall be insured in the fund according to the provisions of this chapter automatically and without the issuance of any bond and without further action by the commissioner. The provisions of this chapter and of any statute requiring a bond shall constitute the bond of each and every public employee for the purpose of any law of this state requiring such bond and shall constitute the entire contract between the fund and the state or its political subdivisions, respectively, as the obligee in any such bond."

26–2309. "The condition of the bond arising under the provisions of this chapter shall be that the public employee, as principal, faithfully and impartially shall discharge and perform the duties of his office or employment, including such duties as are or may be imposed upon him by law, and shall render a true account of all moneys and property of every kind that shall come into his hands as such public employee, and shall pay over and deliver the same according to law."

26–2310. "Immediately upon, and in no event later than sixty days after, the discovery of any default or wrongful act on the part of any public employee for which the fund is or may become liable, the state auditor, county auditor, city auditor, village clerk, township clerk, or school district clerk, or the treasurer of the state or subdivision thereof, if the defaulting officer is the auditor or clerk of the state or subdivision, and any other officer having supervision of a defaulting public employee, shall file a claim with the commissioner against the fund. Any person injured by such default or wrongful act, if he intends to hold the fund liable therefor, must present his claim to the commissioner within sixty days after the discovery of such default or wrongful act. If a claim is not filed within the time limited by this section, such claim is waived. A claim filed under the provisions of this section shall contain an abstract of the facts upon which it is based and shall be verified by the claimant or by someone in its or his behalf, and, together with all papers relating thereto, shall remain on file with the commissioner."

26–2313. "No action shall be maintained against the fund upon any claim whatever until the claim first has been presented for allowance as provided in this chapter and the allowance of such claim has been refused. The neglect or refusal of the state bonding fund board to act upon any claim for sixty days after its presentation for allowance shall be deemed a refusal of the claim. The filing and disallowance of the claim must be alleged in the complaint in any action brought thereon against the fund."

26–2314. "No action shall be maintained against the fund upon any claim whatever unless such action is commenced within one year after the filing of the claim with the commissioner."

█ The requirement that a claim against the State Bonding Fund shall be filed with the commissioner of insurance not later than sixty days after the discovery of any default or wrongful act on the part of the public officer or employee is a condition precedent to the right to maintain an action against the bonding fund. Ward County v. Balerud, 72 N.D. 173, 5 N.W.2d 425; Felch v. Olsness, 53 N.D. 18, 204 N.W. 848; Madden v. Dunbar, 52 N.D. 65, 201 N.W. 988.

█ Where a statute dealing conclusively with a special subject conflicts with a prior and more general enactment, the later and more specific statute must prevail. Adams County v. Smith, 74 N.D. 621, 23 N.W.2d 873. See also State ex rel. Bismarck Tribune v. Steen, 60 N.D. 627, 236 N.W. 251; Village of Dazey v. Barnes County, 70 N.D. 752, 298 N.W. 13; People v. Breyer, 139 Cal.App. 547, 34 P.2d 1065; Rosenquist v. O'Neil & Preston, 187 Minn. 375, 245 N.W. 621; Townsend v. Little, 109 U.S. 504, 3 S.Ct. 357, 27 L.Ed. 1012. Section 28–0116 NDRC 1943 is a general statute of limitations. Chapter 26–23 deals with one specific subject, that of the State Bonding Fund. That statute is limited in scope and effectiveness to that subject with which it deals exclusively and comprehensively. Among its provisions are Section 26–2310 NDRC 1943, limiting claims against the bonding fund to those filed within sixty days after discovery, and Section 26–2314 NDRC 1943, limiting actions against the fund to those commenced within one year after the filing of the complaint. While the wording of these statutes is mainly prohibitive, the statutes are impliedly permissive and thereunder claims against the bonding fund may be filed within sixty days after discovery and actions thereon may be commenced within one year after filing.

In Miller v. Turner, 64 N.D. 463, 253 N.W. 437, syllabus 3, it is said:

"Chapter 158, Sess.Laws 1919, relating to the state bonding fund, is a special statute of limitations applying to the state bonding fund only. It is a complete act in itself, clear and unambiguous. It does not make any exceptions, and it applies to all persons including those under disabilities."

While that case does not deal with the six-year statute of limitations, it does deal with another general statute extending the period of limitation for persons under certain disabilities, Section 28–0125 NDRC 1943. It would seem that if the bonding fund act is exclusive as against the provisions of the general statute extending the period of limitation because of disabilities, it is also exclusive as to the general statute prescribing limitations.

Our search for a statute in another jurisdiction comparable to our State Bonding Fund Law has been unrewarding and consequently we have been able to find no authority beyond our own court that is directly in point. However, a number of cases supporting the view that a special limitation statute expressly covering particular officers or their bonds or sureties or expressly covering particular actions against public officers and their sureties is controlling rather than a general statute of limitation, regardless of whether the liability involved is contractual or statutory, are cited in an annotation, 18 A.L.R. 2d 1213.

█ When the legislature enacted Chapter 158 SLND 1919, it set forth the pur-

poses of the act in the title, wherein it is said to be an act "Providing for the Payment of Premiums and of Indemnities; Providing for Presentation and Allowance of Claims and Fixing Limitations of Actions Thereon; * * *." The legislature fixed the limitations of actions on claims without regard to the general statute of limitations. In doing so, it emphasized "the discovery of any default or wrongful act". It imposed no duty on the bond claimant prior to discovery but the duty was placed upon the claimant "Immediately upon, and in no event later than sixty days after, the discovery * * *" to file a claim. Thus upon discovery prompt action was required. A limitation was then further provided requiring that suit be brought upon the claim within one year after filing. It is clear to us that these limitations and conditions are all the restraints that the legislature intended to impose upon the right to recover for any default or wrongful act on the part of any public employee for which the fund might become liable. To hold that the general statute of limitations would also apply to a claim even though it had not been discovered would lead in many instances to confusion and complications. The terms of the bonding fund act with respect to discovery and the time of filing the claim and bringing suit thereon are clear. We hold that they are independent of and unaffected by the general statute of limitations.

■ The commissioner takes another defensive position not based upon the statute of limitations. He points to Section 11-1421 NDRC 1943 which requires the outgoing county treasurer to make a full and complete settlement with the board of county commissioners and to deliver up all books, papers, moneys, and other property pertaining to his office to his successor and to take a receipt therefor. During the last term of office of Mr. Tavis he was bonded in the sum of $75,000. It is argued that when he took over the office from Porter he certified that all records were in order and receipted therefor and thus assumed and became responsible for all defalcations of both himself and Porter prior to his final assumption of office and that the total

recovery must be limited to the amount of the last bond. The brief does not point out wherein the record contains facts to support this contention, but if we assume that Tavis receipted to his predecessor because the statute requires it and for that reason consider the point, the appellant's position in this respect still cannot be sustained. Where an officer succeeds himself and a shortage in the funds is shown to exist in a certain term, it is presumed that the shortage occurred during that term. But the presumption is not a strong one and is readily overcome by proof of a shortage during the prior term. Dickinson v. White, 25 N.D. 523, 143 N.W. 754, 49 L.R.A.,N.S., 362. See also Custer County v. Tunley, 13 S.D. 7, 82 N.W. 84, 79 Am.St.Rep. 870.

■ In Independent School District v. Hubbard, 110 Iowa 58, 81 N.W. 241, 243, 80 Am.St.Rep. 271, it is said of settlements similar to the one prescribed by our statute that:

"These settlements and the production of funds are intended for the security and protection of the municipalities by insuring punctuality and responsibility of public officials, and form no part of the contract with the surety."

In the same case we find this pertinent quotation from Hart v. U. S., 95 U.S. 316, 24 L.Ed. 479:

" 'The government is not responsible for the laches or the wrongful acts of its officers. * * * Every surety upon an official bond to the government is presumed to enter into his contract with full knowledge of this principle of law, and to consent to be dealt with accordingly. The government enters into no contract with him that its officers shall perform their duties. A government may be the loser by the negligence of its officers, but it never becomes bound to others for the consequences of such neglect, unless it be by express agreement to that effect.' "

■ No authority has been cited and our search has revealed none supporting the appellant's contention that the surety on a bond of a defaulting treasurer may be released because a successor falsely re-

ceipts for an amount sufficient to include and cover the default of the outgoing treasurer. In this case the embezzlements during the respective terms of Tavis and Porter are definitely established by stipulation. They are separate defaults constituting individual liabilities on the part of the principal and the surety for their respective terms. The situation is not altered by the fact that the State Bonding Fund was the surety during the period covering all the defaults. The liability of the surety is not affected by false receipts issued to the defaulting treasurer by his successor whether that successor be the defaulting treasurer himself or another individual.

■ We have reached the conclusion that the defendant insurance commissioner may not avail himself of the defense of any of the provisions of the six-year general statute of limitations, Section 28–0116 NDRC 1943, and that the defaults of Tavis and Porter during their prior terms are not merged in the default of Tavis during his final term. The two judgments separately appealed from and considered herein are affirmed.

BURKE, SATHRE, JOHNSON and GRIMSON, JJ., concur.