(82 N. W. Rep. 738.)

---

MOSES MERCHANT vs. MICHAEL PIELKE.

Opinion filed April 26, 1900.

**Reformation of Contract.**

The testimony in this case is of that clear and satisfactory character that warranted the trial court in reforming a written contract by reason of mutual mistake.

Appeal from District Court, Richland County; *Pollock,* J.

Action by Moses Merchant against Michael Pielke. Judgment for plaintiff, and defendant appeals.

Affirmed.

*A. E. Sunderhauf* and *Merrill & Engerud,* for appellant.

To justify a court in exercising its power to revise a contract fraud or mistake must be clearly proven. A mere preponderance of evidence will not suffice. What the parties have solemnly reduced to writing cannot be varied or overthrown by oral proof unless the clearest evidence of mistake or fraud is produced. *Clute* v. *Frazier,* 12 N. W. Rep. 327; *Newton* v. *Holley,* 6 Wis. 592. The same rule applies here as was announced in *Jasper* v. *Hazen,* 4 N. D. 1. The court cannot make a contract for the parties; it can only declare what the parties agreed upon and enforce the agreement. 2 Pom. Eq. Jur. § 859; *Page* v. *Higgens,* 5 L. R. A. 152 & n. If the parties signed the written instrument knowing of omissions they cannot ask the court for revision. *Ellison* v. *Fox,* 38 N. W. Rep. 358; 2 Pom. Eq. § 839; Rev. Codes, § 3852.

*Smith Stimmel,* for respondent.

The fact that defendant denies that there is a mistake, and testifies that the deed was drawn according to the intention of the parties will not prevent the court from granting relief. *Stines* v. *Hays,* 36 N. J. Eq. 369; *Beal* v. *Martin,* 67 N. W. Rep. 433; *Geib* v. *Reynolds,* 28 N. W. Rep. 923.

BARTHOLOMEW, C. J. This is an action in equity for the reformation of a contract. The plaintiff was successful in the District Court, and defendant brings the entire case to this court for a retrial. The issues are exclusively issues of fact, and will be treated as briefly as may be consistent with an understanding of the case. Any extended discussion of the testimony would prove unprofitable.

The defendant is the owner of a tract of land in Richland county consisting of nearly 400 acres. Of this amount, about 300 acres, roughly speaking, are cultivated and meadow lands. The remainder is pasture and timber land. It is all in one body. In the summer of 1898 there were on this farm one dwelling house, a large frame barn, two frame granaries, known as the large and the small granary, respectively, a log stable, a hog barn, and chicken house. On July 9, 1898, the parties went to the office of one Tweto, in the Village of Abercrombie, for the purpose of having a contract drawn between them pursuant to certain agreements already made, whereby plaintiff was to occupy and use the farm for a period of five years, and until the end of the cropping season of 1903. A contract was drawn and signed, and in October following, plaintiff moved his family, with his stock and machinery, onto the farm. At that time defendant was building a new dwelling house on the farm, only a few feet from the old dwelling house. As the new house was not completed, both families occupied the old until in November, when defendant, with his family, moved into the new. In the spring and summer

of 1899 differences arose between the parties as to the right of possession in certain buildings on the farm, and of the pasture and meadow land, and these differences became so accentuated that injunctions and counter injunctions, and arrests and counter arrests, became quite common. The whole controversy hinged upon the nature of the contract. If that was what is known as a "cropper's contract,"—a contract under which plaintiff's right of possession would extend only to such land and buildings as were specially granted,—then defendant was in the right. If, on the other hand, the relation of landlord and tenant existed,—if the contract was a lease, under which the lessee would be entitled to the possession of all the land and buildings not specially reserved,—then the plaintiff was right in his contention. In form, the contract was what is usually termed a "cropper's contract." It was on the same blank form that was before the court in *Angell* v. *Egger*, 6 N. D. 391, 71 N. W. Rep. 547. We there said that some of the provisions seemed to be inconsistent with anything but a lease. But there are other provisions by which the second party, for a consideration to be paid by the first party, agrees to crop the land for the year or years specified, and that consideration is a certain share of the grain raised. The plaintiff in his complaint sets forth the oral contract entered into between the parties on July 4, 1898, five days before the written contract was made. The contract as thus set forth was clearly a contract of lease, and it is averred that it was the purpose and intention of both parties to have the oral contract thus made reduced to writing, but that, by the mutual mistake of both parties at the time of the execution of the written contract, it does not truely or correctly state the agreement between the parties, and he asks to have the contract reformed to correspond with the intention of the parties. The answer denies generally the mistake as alleged by plaintiff, but asserts that the contract was incorrect in certain particulars that would make it more favorable to the defendant.

The trial court so far reformed the written contract as to make it a technical lease, with certain reservations; and in this we reach the same conclusion, on a full review of the evidence, that was reached by the trial court. We recognize and apply the rule for which appellant contends, and which requires the proof upon which a written instrument shall be changed and reformed by reason of mutual mistake to be clear and convincing. But there is very little real conflict in the testimony. Plaintiff claims that all the details of the contract were agreed upon on the 4th day of July, 1898. It stands admitted that defendant and his wife visited plaintiff on that day for the purpose of making an agreement about the farm. There were present at that interview the defendant and his wife, the plaintiff and his wife, and one Stone, who was in the employ of plaintiff. In all points where there is a difference between the parties as to what took place that day, plaintiff has the preponderance of the testimony. Defendant will not admit that the contract was com-

pleted on July 4th, and his counsel urge upon us that nothing but a preliminary outline was agreed upon until the writing was made, and that the writing presents the first real contract that was made. Defendant, however, concedes that on July 4th he requested Mr. Stone to write a note for him to a man who had been negotiating for the farm, informing him that he could not have it, as plaintiff was going to have the whole farm, and that the note was so written and delivered. He also testifies as to what took place when they went to the scrivener's, as follows: "I said to Tweto, let Merchant tell you what he is going to have to do, and then Merchant spoke the whole story right along. Merchant said he was to rent the farm, and draw the manure, and do the road work. He stated the contract all right." It is clear from this that the contract had already been made, and the contract as then stated by Merchant to Tweto, as is fully shown by other witnesses, was clearly a contract of lease. When the point was reached for the description of the land, defendant could not give the description. He knew the section, township and range, and that there were at least 300 acres; and at the suggestion of the scrivener it was described as "about 300 acres, more or less, in section 5, township 135, range 48, known as the 'Pielke Farm.'" This ordinarily would cover all the land in the one body, belonging to the one owner, and used in connection with his farming business. But, by reason of certain statements made at the time, it was clear that it was not the intention to include the wood land. The trial court excluded the wood land from the operation of the lease. But it included the meadow land and the pasture. At the time the contract was made, defendant expected to acquire property in Abercrombie and live in town, and the undisputed evidence shows that he repeatedly made efforts so to do, and stated that he had rented his farm. But their contract did provide for a division of possession as to the buildings. The defendant was to furnish all seed grain, under the terms of the contract, and he stated that he would want granary room therefor. As it was the expectation to haul all grain that was not to be used on the farm directly to the elevator as fast as threshed, plaintiff stated that he would only need granary room for his feed. But no reference was made to the granaries in the written contract. The court held that the defendant in fact reserved the large granary. Defendant also stated that he might keep a driving team and a few cows on the farm, and he wished to reserve barn room for such stock and for the hay for their use, and to that end he reserved one-half of the large barn. The scrivener made the provision as to buildings read: "Moses Merchant is to have full control of the dwelling house now on the farm, and one half the barn room now on the farm." The decree of the court reforms that to correspond with the intentions of the parties. As the new house was erected with full knowledge of plaintiff after the execution of the lease, and he in no manner objected thereto, the court held that defendant was entitled to use and occupy the same, with the road or driveway

leading to and from the house. There are other points of differ-
ence between the parties that are settled by the decree. We need
not specially notice them. The surprise that arises from the fact
that these parties signed a contract which each now says fails in
some respects to express the intention of the parties is much lessened
when we remember that these parties are foreigners of different
nationalities, having but limited use of the English language, and
that the scrivener employed is a foreigner of still another nationality;
having, as shown by his testimony, no correct knowledge of technical
terms, and no conception of the difference between a cropping
contract and a lease. The task of the trial court in ascertaining what
these parties mutually intended to do, and what they mutually
thought they were doing, when they executed the contract, was a
difficult one, but we are convinced that the court meted out even-
handed justice as nearly as was possible under the circumstances.
The judgment and decree of the trial court are made the judgment
and decree of this court, and are in all things affirmed. All concur.
(82 N. W. Rep. 878.)