[File No. 7250]

CLYDE WILSON, Appellant, v. REINHOLD POLSFUT, et al., REINHOLD POLSFUT, Respondent.

(40 NW2d 102)

Opinion filed July 21, 1951

*Joseph J. Funke, R. W. Wheeler, Halvor L. Halvorson,* and *Harold H. Walstead,* for appellant.

*B. H. Bradford,* for respondent.

GRIMSON, J. This suit involves the ownership of Lot 5, Sundby's Subdivision to the City of Minot, Ward County, North Dakota. Both the plaintiff and the defendant, Reinhold Polsfut, claim ownership and each asks that title be quieted in him. The plaintiff claims ownership by virtue of deeds he received from the heirs of Elizabeth F. Wilson. The defendant, Polsfut, claims ownership by virtue of an executed purchase of the property from the same heirs. The other defendants default.

The evidence shows that this Lot 5, together with Lots 1, 2, 6 and 7 of Sundby's Subdivision were decreed by the County Court of Ward County to the heirs of Elizabeth F. Wilson on Sept. 8, 1943. On July 22, 1944, the plaintiff bought from the heirs Lots 1 and 2 and the North Half (N½) of Lot 5. On or about August 10, 1944, the defendant, Polsfut, entered into negotiations with Mable Hankla, one of the heirs of Elizabeth F. Wilson and who had been administratrix of her estate, for

the purchase of the remaining Wilson property in Sundby's Subdivision, from the heirs, on which remaining property three houses were located. She was one of the owners and acted for the other owners. Polsfut and Mrs. Hankla met on the premises. Mrs. Hankla was not certain of the boundaries but they were pointed out to her and the defendant Polsfut by a tenant in one of the houses. The boundaries so pointed out included, as was afterwards ascertained, Lots 5, 6 and 7. An agreement was reached between Mrs. Hankla and the defendant, Polsfut, for the purchase by Polsfut of the three houses and the tract of ground on which they were located for $3100.00. Polsfut paid down $100.00 and Mrs. Hankla said her attorney would prepare the necessary deeds and call him when conveyances and abstracts were ready, at which time the balance of the purchase price was to be paid. That was done about Sept. 20, 1944, in the presence of the plaintiff and most of the heirs, who were then informed by Mrs. Hankla, that she had sold the rest of the Wilson property in Sundby's Subdivision, consisting of three houses and the tract upon which they were located. The plaintiff acquiesced therein. With that knowledge the deeds were signed by all the heirs. Final payment was made upon that understanding and plaintiff, who was one of the heirs, received his share of the proceeds. The acts of Mrs. Hankla were fully ratified. Plaintiff is estopped from denying this agreement.

None of the immediate parties to this transaction had actual knowledge of the exact boundaries of the tract involved nor were they aware that a part of the land pointed out, towit: The North Half (N$\frac{1}{2}$) of Lot 5, was a part of the land already deeded to plaintiff. The deeds that were given to the defendant, Polsfut, transferred only Lots 6 and 7 of Sundby's Subdivision but were by all thought to transfer all three houses. Immediately after receiving his deeds defendant, Polsfut, went into possession of the three houses and the land on which they were situated. He collected all the rents and remained in possession up to the time of the trial.

On Dec. 22, 1944, plaintiff obtained deeds from the other Wilson heirs for the South Half (S$\frac{1}{2}$) of Lot 5. In 1946 defendant Polsfut placed a house, without objections from plaintiff, on

what proved to be the North Half (N½) of Lot 5, worth, he claims, $5000.00.

Not until 1948 was it discovered that the deeds Polsfut had received did not include the third house. It was found to be on the South Half (S½) of Lot 5. Some negotiations for settlement between plaintiff and defendant, Polsfut, were attempted but failed. Plaintiff brings this action to quiet title to Lot 5 in him. Defendant, Polsfut, asks that his deeds be reformed in accordance with the agreement of the parties at the time he purchased the property and that title be quieted in him. The District Court found that defendant, Polsfut, was the owner in fee and entitled to possession of the South Half (S½) of Lot 5, free of any and all claims of the plaintiff, Wilson; that the plaintiff, Wilson, was owner in fee of the North Half (N½) of Lot 5 of Sundby's Subdivision but that defendant, Polsfut, owned the house he had built thereon and was entitled to ninety days in which to remove that house.

Plaintiff appeals from the court's decision on the South Half (S½) of Lot 5 and the court's disposition of the house located on the North Half (N½) of Lot 5.

In an action to quiet title "the court in its decision shall find the nature and extent of the claim asserted by the various parties and shall determine the validity, superiority and priority of the same." Sec. 32–1710 NDRC 1943. Both contesting parties in this action have asked for complete, equitable relief and a determination of their respective claims regarding the tract of land in controversy. A court of equity has authority to grant as full relief as is sought by the pleadings and within the scope of proof. Styles v. Dickey, 22 ND 515, 526, 134 NW 702, 44 Am Jur Quieting Title, Sec 94, p 79.

In such action to quiet title as an incident thereof the court may determine whether the minds of the parties have met in an agreement concerning the property involved which has, by mutual mistake been incorrectly written and which would entitle one of the parties to a reformation of the written instrument. 51 CJ Quieting Title, Sec 268, p 277; Adams v. Betz, 167 Ind 161, 168; Hunter v. McCoy, 14 Ind 528. There must be clear, satisfactory and convincing evidence of a meeting of the

minds of the parties on a contract and of a mutual mistake in the writing of the instrument before a reformation could be had. Forester v. Van Auken, 12 ND 175, 96 NW 301; Harley v. Magnolia Petroleum Co.; 378 Ill 19, 37 NE2d 760; Russell et al. v. Shell Petroleum Corporation, Circuit Court of Appeals, 10th Circuit, 66 F2d 864; 1 Elliott on Contracts, Mistake, Sec 109, p 185. A misdescription of the property agreed to be conveyed may be reformed. 45 Am Jur Reformation of Instruments, Sec 38, p 604; 53 CJ Reformation of Instruments, Secs 50 and 51, p 932.

The District Court says in his memorandum opinion that the "proof is sufficient to establish that the parties did agree to buy and sell the three houses and the tract upon which they were situated, so that defendant, Polsfut, is entitled to reformation of the deed so as to include the South Half (S½) of Lot 5." Thereupon he made a final determination of the validity and priorities of the claims of the contesting parties as hereinbefore stated.

The evidence amply sustains the findings of the trial court. Although Mrs. Hankla did not know the boundaries or description thereof she was, as Polsfut knew, selling only what was left of the property belonging to the Wilson heirs in that subdivision. Actually that was Lots 6, 7 and the South Half (S½) of Lot 5. The North Half (N½) of Lot 5 had already been sold to the plaintiff. Lot 5 had prior thereto been divided into halves and conveyed by separate deeds so that the North Half (N½) of that lot was not necessarily a part of the tract on which the house on the South Half (S½) was located. The eastern part of Sundby's Subdivision was divided into Lots 1, 2, 3 and 4 running east and west. The western part of the subdivision was divided into Lots 5, 6 and 7 running north and south. Lot 5 joined the west ends of Lots 1, 2, 3 and 4. The plaintiff had bought Lots 1 and 2 and the North Half (N½) of Lot 5 which joined them on the west, as one tract. The garage attached to his barn extended over on the North Half (N½) of Lot 5. Of that fact Polsfut had taken notice at the time of the negotiations. That should have put him on inquiry as to title. It is true that the whole of Lot 5 was included in the boundaries pointed out to the defendant but that was not done by any of the interested

parties. Mrs. Hankla frankly said that she didn't know the exact boundaries. The one thing that was clearly understood and upon which the minds of the parties met was that Mrs. Hankla was selling all of the remaining property in Sundby's Subdivision belonging to the Wilson heirs which consisted of three houses and the tract of land on which they were located. Clearly that included not only Lots 6 and 7 but also the South Half ($S\frac{1}{2}$) of Lot 5. That was all that was included in the agreement.

What this court said in Merchant v. Pielke, 9 ND 182, 82 NW 878, applies well in the instant case. "The task of a trial court in ascertaining what these parties mutually intended to do, and what they mutually thought they were doing, when they executed the contract, was a difficult one, but we are convinced that the court meted out evenhanded justice as nearly as was possible under the circumstances."

The plaintiff appealed from the decision of the trial court giving the defendant, Polsfut, the right to remove the house he had built on the North Half ($N\frac{1}{2}$) of Lot 5. However, plaintiff did not put up a stay bond and Polsfut removed the house within the 90 days allowed by the court with no objection from plaintiff and some two months before the appeal was taken.

That house was built by Polsfut on what he and all parties to the transaction believed to be land that had been transferred by the deeds to defendant, Polsfut, as Lots 6 and 7. There was no intent on his part to make that house a part of plaintiff's real estate. It was built on that lot by mutual mistake of the parties. Plaintiff was as much at fault as the defendant in failing to ascertain the boundaries of their respective properties. "Adjustment of the equities by the parties is within the powers of the court in equitable actions." Pillsbury v. Streeter, 15 ND 174, 182, 107 NW 40. Equity will grant remedial relief "where justice and good conscience so dictate." Dorman v. Crooks State Bank, 55 SD 209, 225 NW 661. The object to be aimed at by the courts of equity in such cases is to place the parties as nearly as possible in the same position as they would have been had there been no mutual mistake made in connection with

the matter. That is just what the District Court did. He gave defendant, Polsfut, his house, placed by mistake on plaintiff's land, and he gave plaintiff back his land.

Plaintiff claims there is a lack of necessary parties. He claims that all of the heirs of Elizabeth F. Wilson are necessary parties. All of those heirs had by deed transferred their interest in all of Lot 5 to the plaintiff, Clyde Wilson. They have no more interest in that property. Wilson as an heir of Elizabeth F. Wilson and as grantee of the other heirs, claimed the interest of all of them in that property. Such other heirs were, therefore, not necessary parties to a complete determination of the issue here involved. It is, however, claimed on behalf of plaintiff that upon filing of the answer those heirs should have been interpleaded on the grounds that "if reformation is granted, then Wilson will have an action against them for rescission of his executed contract (deed) concerning the South Half (S½) and/or the North Half (N½) of Lot 5." No request for such interpleader was made by plaintiff in District Court. The only interest the other heirs could have was the contingency of a suit by Wilson against them for some damages in case he should lose out in the case at bar. Their liability to plaintiff in such event would depend upon the scope of their covenants in connection with their deeds. That could properly be determined in a separate action between Wilson and the other heirs and is not an issue in the instant case. Smith v. Gale, 144 US 509, 36 L ed 521, 12 S Ct 674.

The plaintiff while he was record owner of Lot 5 paid the taxes thereon. Defendant in his pleadings and in this court offered to reimburse him for those taxes. Plaintiff is entitled to reimbursement of the taxes he paid on the South Half (S½) of Lot 5. Smith v. Fladeland, 55 ND 433, 214 NW 42; Powers v. Bottineau First National Bank, 15 ND 466, 109 NW 361, 51 CJ Quieting Title, Sec 272, p 297. The amount of those taxes is not shown in the evidence. That amount should be ascertained and defendant, Polsfut, given reasonable time to pay such taxes before relief is granted.

The determination of the District Court is affirmed and the

case remanded for the disposition of the tax matter in accordance herewith.

MORRIS, Ch. J., CHRISTIANSON, SATHRE and BURKE, JJ., concur.