[File No. 7001]

ADAMS COUNTY, a Public Corporation of North Dakota, Respondent, v. LeROY SMITH AND DAKOTA COLLIERIES COMPANY, a Private Corporation of North Dakota, Appellants.

(23 NW2d 873)

Opinion filed July 31, 1946.   Rehearing denied August 24, 1946

*W. C. Crawford* and *Sullivans, Fleck & Higgins,* for appellants.

*Nels G. Johnson,* Attorney General, and *C. E. Brace,* Assistant Attorney General, for respondent.

MORRIS, J.  On March 30, 1942, Adams County, the plaintiff herein, sold a quarter section of land that it had acquired through tax deed proceedings to the defendant LeRoy Smith. On October 16, 1942, the county issued a deed to the purchaser in the form prescribed by § 15, Ch 286, Sess Laws ND 1941.  The deed purported to grant, bargain, sell, and convey the property to Smith and contained no reservations of any kind.  After acquiring the land the purchaser spent some sixteen to twenty weeks and approximately $1000 in digging test holes and making explorations to determine the approximate amount of coal on the land available for mining.  On September 10, 1943, he leased the property to the Dakota Collieries Company for coal mining purposes.  The lease provided for the payment of a royalty to the lessor of seven cents for each ton of coal mined from the land and sold during the life of the lease which might continue in effect until the salable coal upon the premises had been removed.

This action was commenced on November 20, 1944.  The county seeks to recover from the defendants damages amounting to one-half of the royalties provided by the lease.  The case was tried to the court without a jury, who found for the plaintiff and ordered judgment against the defendants jointly and separately for $1430.39, being one-half the amount of royalties earned under the lease up to September 1, 1944, together with interest thereon from that date and the costs of the action.  The defendants appeal from a judgment entered pursuant to the order.

The county bases its claim to a share of the royalties on Ch 136, Sess Laws ND 1941, which provides:

"1. In all transfers of land hereafter made by any county of the State of North Dakota of lands now owned by such county or of lands which may hereafter be acquired by any county of the State by tax proceedings, deed, quitclaim deed, or by any other method, and whether such transfers made by

such county are made by deed, contract or lease, there shall be reserved to such county. transferring such land fifty per cent (50%) of all oil, natural gas, and/or mineral which may be found on or underlying such land. Any transfer, deed or lease which does not contain such reservation shall be construed as if such reservation were contained therein. This act shall not apply to any lands redeemed by the former record owner thereof within one year after the date the county issues title thereof.

"2. It is the intention of the Legislature in passing this act to reserve to the county one-half of all oil, natural gas, and/or minerals found on or under such land with the intention that the county may join with the owner of the other fifty per cent (50%) of such oil, gas or mineral rights to make any standard or reasonable contract for the drilling, mining and/or production of oil, gas and minerals upon a royalty basis."

The first question to be determined is whether the word "mineral" as used in the statute may be said to include coal. The statute attempts to impress a mineral reservation upon conveyances of land made by counties. It is proper, therefore, to consider the meaning given by the courts to the term "mineral" in conveyances and reservations. The meaning and scope of this term has come before the courts in many cases. See annotations in 17 ALR 156, and 86 ALR 983. These cases disclose that the word "mineral" is not a definite term susceptible to a rigid definition applicable in all instances. It is a term susceptible of limitations or extensions according to the intention with which it is used. United States ex rel. Tennessee Valley Authority v. Harris (CCA 5th) 115 F2d 343; Puget Mill Co. v. Duecy, 1 Wash 2d 421, 96 P2d 571; Kalberer v. Grassham, 282 Ky 430, 138 SW2d 940; Rock House Fork Land Co. v. Raleigh Brick & Tile Co. 83 W Va 20, 97 SE 684, 17 ALR 144; Thompson, Real Property, Perm ed, § 86. The North Dakota Legislature in Ch 304, Sess Laws ND 1911 (§ 5518, Comp Laws ND 1913) in connection with reservations in deeds and transfers of real property referred to "coal or other mineral deposits" indicating a legislative intent to consider coal as a mineral. This legislative construction is given added significance by the fact that Sec 5518

was amended by Ch 268, Sess Laws ND 1941 and thus came to the special attention of the same legislative assembly that enacted Ch 136, Sess Laws ND 1941, the statute we are now construing.

We have found no cases holding that coal is not a mineral. Wherever the question has been considered the courts have construed the term "mineral" to include coal. Henry v. Lowe, 73 Mo 96; Williams v. South Penn Oil Co. 52 W Va 181, 43 SE 214, 60 LRA 795; Murray v. Allred, 100 Tenn 100, 43 SW 355, 39 LRA 249, 66 Am St Rep 740; McCombs v. Stephenson, 154 Ala 109, 44 So 867. We, therefore, reach the conclusion that the term "mineral" as used in Ch 136, Sess Laws ND 1941, includes coal.

The ultimate decision in this case depends upon the construction and application of three statutes all of which were passed by the Twenty-seventh Legislative Assembly and are found in the Session Laws for the year 1941. The first statute and the one on which the county relies is Ch 136 which we have quoted above. It requires that in all transfers of lands by counties fifty per cent of all oil, natural gas and/or mineral on or under the land should be reserved to the county and that any instrument of transfer should be construed as though the reservation was contained therein. Thus the statute incorporated the reservation in all instruments of transfer to which it applies. The reservation thus made by Ch 136 collides insofar as coal is concerned with Ch 268, Sess Laws ND 1941, which provides:

"Section 1. Amendment.) That § 5518 of the Compiled Laws of North Dakota for 1913 be, and the same is hereby amended and re-enacted to read as follows:

'Section 5518. Reservation of coal limited to description. All deeds and transfers of real property in this state that reserve to the grantor the coal in said property shall contain an accurate description of the coal reserved to the grantor, its nature, length, width and thickness and the coal reserved to the grantor shall be limited to such description. Provided that the provisions hereof shall not apply to state and school lands.'

"Section 2. Amendment.) That § 5519 of the Compiled Laws

of North Dakota for 1913 be, and the same is hereby amended and re-enacted to read as follows:

· 'Section 5519. Reservation without description ineffectual. Every deed and transfer of real property in this state that recites a reservation to the grantor of the coal deposits in said property, but which does not contain an accurate description of such deposits as required in Section 5518 shall be construed to transfer to the grantee named in such deed, all right, title and interest to such property and all deposits of coal imbedded therein, notwithstanding such attempted reservation.' "

The statute last quoted does not apply to state and school lands but no exception is made with respect to lands owned by counties. The inconsistency of the two statutes becomes obvious at a glance. The reservation inserted in a transfer by the county which by construction is read into each transfer cannot contain an accurate description of the coal as required by Ch 268 and comes in direct conflict with the provision of Ch 268 which makes the reservation without the description ineffectual.

The second statute passed by the Twenty-seventh Legislative Assembly that conflicts with Ch 136 is Ch 286, Sess Laws ND 1941. The latter act deals exclusively with tax deed proceedings and property acquired thereunder by counties. It provides for the giving of notice and fixing the date of expiration of the period of redemption on real property sold to the county for delinquent taxes, the service of such notice, the issuance of tax deed to the county in the event no redemption is made, and the appraisal of property so acquired by the county. It also provides the procedure to be followed in making a resale by the county, the form of deed to be given by the county and the effect thereof and gives to the former owner the right to repurchase the property within the time and upon the conditions set forth in the statute.

The form of deed to be used by the county when it sells property acquired through tax deed proceedings provides:

"Whereas, said real property was duly offered for sale, and sold, pursuant to authority of law, on the —— day of ——

19——, and at said sale, said second party became the purchaser of the whole thereof, for the sum of———— dollars, which has been paid in full.

"Now, therefore, the said county as party of the first part in consideration of the premises and pursuant to authority of law, does hereby grant, bargain, sell and convey to the second party, his heirs and assigns, that certain real property situated in said County of ————, North Dakota, described as follows, to wit: To have and to hold the above described real property with all of the appurtenances thereunto belonging to the said party of the second part, ———— heirs, and assigns forever."

Section 14 of Ch 286, which sets forth the manner and terms under which property is to be sold by the county at the annual sale of tax deed property provides:

"That upon payment of the purchase price in cash or upon installments with interest, in full, the county shall execute and deliver to the purchaser a deed conveying all right, title and interest of the county in and to such property, to such purchaser."

Section 18 makes the same terms and form of deed applicable to sales of tax deed property by the county at private sale. This provision as well as the form of the deed is in direct conflict with the reservation prescribed by Ch 136. The deed which Adams County gave to the defendant Smith is in the form above prescribed by and was executed and delivered pursuant to a sale conducted in accordance with the provisions of Ch 286.

There being apparent conflicts between statutes enacted by the same legislative assembly the chronological order of their enactment becomes of major importance. An examination of the legislative journals of the 1941 Session discloses the order in which the various statutes under consideration were passed and approved by the Chief Executive. All three acts were emergency measures and, therefore, became effective upon their passage and approval. Section 67, ND Constitution. Ch 268 was enacted as Senate Bill 133. It was passed by the Senate February 11, by the House February 26 and signed by the Governor March 7. Ch 136 was enacted as House Bill 123. It was

passed by the House February 21, by the Senate March 5 and approved by the Governor March 14. Ch 286 was enacted as Senate Bill 205. It was passed by both the Senate and the House on March 7 and signed by the Governor on March 15.

A consideration of some of the basic rules of statutory construction now becomes pertinent. Repeals by implication are not favored. Sargent County v. Sweetman, 29 ND 256, 150 NW 876; State v. Rodman, 57 ND 230, 221 NW 25; State ex rel. Kolpriva v. Larson, 48 ND 1144, 189 NW 626; State ex rel. Fargo v. Wetz, 40 ND 299, 168 NW 835, 5 ALR 731; 50 Am Jur 542, Statutes, § 538. The disfavor with which courts look upon repeals by implication is based on the presumption that laws are passed with deliberation and with full knowledge of previous legislative action and that where a repeal is intended, express terms will be used to accomplish that result. This presumption is especially strong with respect to acts passed at the same legislative session. Merchants' Transfer & Warehouse Co. v. Gates, 180 Ark 96, 21 SW2d 406; McCain v. Farmers Electric Co-op Corp. 206 Ark 15, 172 SW2d 933. Although statutes passed at the same legislative session must, if possible, be construed together and effect given to each, nevertheless, if there be an irreconcilable conflict, it will be presumed that the legislature intended that the earlier statute should give way to the later. Buttorff v. York City, 268 Pa 143, 110 A 728; Com. ex rel. Matthews v. Lomas, 302 Pa 97, 153 A 124, 74 ALR 481. In the latter case the court said ". . . , there is nothing to prevent the Legislature, if it sees fit, even during the same session, from changing its mind with respect to a particular subject of legislation, and, if the two acts are in irreconcilable conflict and cannot stand together, then the earlier must give way to the later."

A comparison of Ch 268 and Ch 136 discloses that although they were enacted at the same session, Ch 136 is the later enactment both with reference to its passage in the Legislature and its approval by the Governor. Ch 268 is an amendment of §§ 5518 and 5519, Comp Laws ND 1913. These sections were originally enacted as Ch 304, Sess Laws ND 1911 under the title "AN ACT to Aid Assessors in Valuing Coal Deposits Reserved to Grant-

ors by Providing That All Deeds and Transfers of Real Property, Which Reserve the Coal Deposits to the Grantor Shall Contain a Full Description of the Coal Deposits, so Reserved, its Length, Width, and Thickness." The change wrought by the amendment is of no consequence in this case. It struck from the statute references to "other minerals" and thus brought the provisions of the statute within the scope of the original title which applied only to coal deposits. The title to the original act as well as the title to the amendment indicates a purpose to aid assessors in valuing coal deposits. Lands belonging to counties are not subject to taxation and are not assessed. Coal deposits owned by the counties are likewise exempt. To limit reservations of such deposits by counties to those specifically described in the manner required by the statute would not further the purpose of the act for assessors do not value such deposits. Thus the comparison of these two statutes supports the presumption that the legislature, by the enactment of Ch 136 after it had enacted Ch 268, intended to except coal deposits owned by counties from the provisions of Ch 268 and not require that reservations of coal in county deeds set forth the nature, length, width, and thickness of the deposits.

Chapter 268 by its own provisions excepts state and school lands from its operation. This was undoubtedly done because such lands were tax exempt and they were not subject to assessment. It is reasonable to suppose that the legislature, when it subsequently though at the same session enacted Ch 136, decided to treat county owned lands in the same manner for the same reason. We, therefore, reach the conclusion that as between these statutes there is an irreconcilable conflict, and Ch 136 prevails with respect to reservations of coal deposits by counties.

Our consideration now moves to the conflict existing between Ch 136 and Ch 286. The chronology of these statutes indicates that Ch 286 is the later enactment and to that extent stands in a favored position. This position is further strengthened by the nature of the enactments and the subjects covered thereby. Chapter 136 purports to apply to all transfers of land made after its effective date by any county of the state regardless of

the method by which the land was acquired by the county. To that extent it is general in its nature and provides for a reservation of certain deposits which may be found on or underlying such land. It impresses a reservation upon each transfer regardless of whether the reservation is expressed in the conveyance.

Chapter 286 deals exclusively and comprehensively with tax titles acquired by the county. It is not an amendment of a former act. It is a new law dealing fully with a specific subject. It expressly repeals Ch 235 and Ch 238 of the Session Laws of 1939. While it embodies many of the features and much of the language of those acts it also embraces many changes and much new material. With reference to the conveyance of land acquired by tax deed proceedings it provides that the deed given to the purchaser is one conveying all right, title and interest of the county and prescribes a form of deed containing no reservation.

In addition to the rules of statutory construction already referred to, we find that the courts have frequently held that where provisions of an act dealing with a specific subject are repugnant to those of an act more general in its nature the one dealing with the specific subject will prevail. State ex rel. Bismarck Tribune v. Steen, 60 ND 627, 236 NW 251; Townsend v. Little, 109 US 504, 27 L ed 1012, 3 S Ct 357. In the latter case the court had before it the validity of a deed that had been issued in compliance with the terms of a statute providing for the conveyance of lands by cities and towns. The deed was not witnessed as was required by a general statute applying to the execution of such instruments. In sustaining the validity of the deed the court said:

"But the act of the territorial legislature providing for the conveyance to occupants by the mayor of lands included in the town site did not require witnesses to his deed. It merely directed that 'deeds of conveyance for the same shall be executed by the mayor of the city or town under the seal of the corporation.' According to the well settled rule, that general and specific provisions, in apparent contradiction, whether in the same or dif-

ferent statutes, and without regard to priority of enactment, may subsist together, the specific qualifying and supplying exceptions to the general, this provision for the execution of a particular class of deeds is not controlled by the law of the Territory requiring deeds generally to be executed with two witnesses."

In Mead v. Bagnall, 15 Wis 157, it is held that where repugnant statutes were approved the same day one relating to a particular class of cases prevailed over a statute more general in character.

Where, as in this case, a statute dealing comprehensively and exclusively with a special subject is in irreconcilable conflict with a prior and more general enactment, the later and more specific statute prevails.

"Whether it is more accurate to say that the later, special statute creates an exception to, or qualification of, the earlier general statute, or whether, the provisions of the later statute being manifestly inconsistent with the earlier statute, an implied repeal of the earlier statute results, is not important, as the effect is the same. Rules of construction, in whatever phraseology, are but guides to ascertain the legislative intent." State ex rel. Green v. Foote, 35 Del 514, 168 A 245.

See also Skipper v. Street Improv. Dist. 144 Ark 38, 221 SW 866.

In State ex rel. Fargo v. Wetz, 40 ND 299, 168 NW 835, 5 ALR 731, supra, this court said that: "Where, at the same session of the legislature, two bills are passed, one providing for the classification of property generally for purposes of taxation and the other dealing particularly with a single species of property which is embraced in the general schedules of the classification act, the conflict in the two bills must be resolved in favor of that which deals particularly with the specific property."

The application of recognized rules of statutory construction with respect to both the chronology of the enactment of the statutes and a comparison of their subject matter and scope impels us to hold that Ch 286 prevails with respect to the conveyance by a county of lands acquired by it through tax deed pro-

ceedings. The deed given by Adams County to the defendant LeRoy Smith complies with the prevailing statute and is not subject to any implied or constructive reservation.

The judgment appealed from is reversed.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE and BURR, JJ., concur.