A. D. MacMASTER and Neva H. MacMaster, Plaintiffs and Respondents,

v.

H. G. ONSTAD, Defendant and Appellant.

No. 7666.

Supreme Court of North Dakota.

Oct. 28, 1957.

Rehearing Denied Nov. 27, 1957.

———◆———

Burk & O'Connell, Williston, for appellant.

Bjella, Jestrab & Neff, Williston, for respondents.

Cox, Pearce & Engebretson, Bismarck, as amicus curiae.

BURKE, Justice.

This is a statutory action to determine adverse claims to real property. Issue was joined upon the question of whether an oil and gas lease by which the plaintiff leased certain lands to the defendant with the exclusive right of mining and operating for and producing oil, gas, casinghead gas, casinghead gasoline and all other minerals, gave to the lessee an interest in, and the right to extract from the described land, minerals other than those specifically named in the lease and those which could be recovered through the drilling and operation of an oil and gas well. The trial judge construed the lease and applying the rule of ejusdem generis in the construction of the words "and all other minerals" held that the lease granted an interest only in such minerals "as are, or can be, produced in connection with, and as an incident of the production of oil and gas through the means of a well," and did not grant an interest in minerals which are extracted from the land by other types of mining operations. The defendant has appealed from the judgment and demanded a trial de novo in this court.

The lease is one of the standard forms of oil and gas leases. It is entitled: "Oil and Gas Lease". The more important provisions of the lease are as follows:

"Witnesseth: That the lessor, for and in consideration of One (1) Dollar (1.00), cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements herein-after contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, demise, lease and let exclusively unto said lessee with the exclusive right of mining, exploring by geophysical and other methods, and operating for and producing therefrom oil, gas, casinghead gas, casinghead gasoline, and all other minerals, and laying pipe lines, telephone and telegraph lines, and building tanks, power stations, gasoline plants, ponds, roadways and structures thereon to produce, save and take care of said products, and the exclusive right of injecting water, brine and other fluids into sub-surface strata, and housing and boarding employees and any and all other rights and privileges necessary, incident to, or convenient for the economical operation alone, or conjointly with neighboring land, for the production, saving, and taking care of oil, gas, casinghead gas, casinghead gasoline, and all other minerals, and the injection of water, brine and other fluids into subsurface strata, all that certain tract of land situated in the County of Williams, State of North Dakota; described as follows, to wit:

Township 156 North, Range 102 West
Section 30: E½ SW¼, Lots 3 and 4

of Section ——— Township ——— Range ——— and containing 160 acres, more or less, it being the purpose and intent of the lessor herein to lease, and lessor does hereby lease, all of the lands owned by the said lessor which adjoin the lands above mentioned or which lie in the section or sections herein specified.

"Subject to the other provisions hereof, it is agreed that this lease shall remain in force for a term of Two years from this date (herein called 'primary term') and as long thereafter as oil,

gas, casinghead gas, casinghead gasoline or other mineral is produced from said leased premises.

"In consideration of the premises the said lessee covenants and agrees:

1st. To deliver to the credit of the lessor, free of cost, in the pipe line to which lessee may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises, or at the lessee's option, to pay to the lessor for such one-eighth royalty, the market price for oil of like grade and gravity prevailing on the day such oil is run into the pipe line or into storage tanks.

"2nd. To pay the lessor one-eighth, at the market price at the well for the gas so used, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making his own connections with the wells at his own risk and expense.

"3rd. To pay lessor for gas produced from any oil well and used off the premises or for the manufacture of casinghead gasoline, one-eighth, at the market price at the well for the gas so used, for the time during which such gas shall be used, said payments to be made monthly.

"4th. To pay or deliver to lessor, on all other minerals mined and marketed, one-tenth either in kind or value at the well or mine, at lessee's election, except that on sulphur the royalty shall be fifty cents (50¢) per long ton."

The balance of the lease sets forth specific rights of the parties in connection with an oil and gas operation upon the leased premises.

The issue arising upon a construction of this lease is in part settled by chapter 235, Laws of N.D.1955. This chapter provides:

"No lease or conveyance of mineral rights or royalties separate from the surface rights in real property in this state shall be construed to grant or to convey to the grantee thereof any interest in and to any gravel, coal, clay or uranium unless the intent to convey such interest is specifically and separately set forth in the instrument of lease or conveyance."

The lease was executed September 24, 1956, and is therefore governed by these statutory provisions. It follows that the words "all other minerals", as used therein, do not include gravel, coal, clay or uranium.

The construction of the lease generally is subject to certain statutory rules of interpretation. Those which we consider pertinent here are as follows:

"The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." Section 9–0702, NDRC 1943.

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter." Section 9–0704, NDRC 1943.

"The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others." Section 9–0706, NDRC 1943.

"The words of a contract are to be understood in their ordinary and popular sense rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed. Section 9–0709, NDRC 1943.

Upon consideration of the lease in the light of these principles, we conclude first, from the title of the instrument, and its overall provisions that, as the trial court

found, the primary considerations of the parties were the exploration and development of the lands in controversy for the production of oil, gas, casinghead gas and casinghead gasoline. The trial judge decided that this conclusion made it necessary to place a limitation upon the ordinary and popular sense of the words "all other minerals" by the application of the maxim "ejusdem generis" to their construction.

It appears to us, however, that the interpretation placed on the lease by the trial court completely vitiates certain of its specific provisions. The lease grants to the lessee "the exclusive privilege of mining, and exploring by geophysical and other methods, and operating for and producing oil, gas, casinghead gas, casinghead gasoline and all other minerals".

■ There is perhaps no particular significance in the fact that the lease authorizes the lessee to mine since the verb mine is commonly used in oil and gas leases to include drilling operations. It is, however, an all inclusive word which in its ordinary sense includes every operation by which usable materials are extracted from the earth. The use of the word does not suggest a restricted interpretation of the lease but rather an unlimited one, if the unlimited interpretation is not otherwise inhibited. We do think there is significance in the fact the lease authorized the lessee to produce not simply oil and gas and other minerals but oil and gas and all other minerals. No word is more inclusive than "all" and it is difficult to see why, if the parties intended a restricted construction to be placed upon the reference to other minerals, they should use a word so completely unrestricted in its meaning.

■ Of most important significance, however, is the fourth paragraph of the section of the lease which sets forth the consideration. Paragraph 1 of this section sets forth the consideration for the oil produced. Paragraphs 2 and 3 provide for the compensation for the gas produced. Paragraph 4 is as follows:

"To pay or deliver to lessor, on all other minerals mined and marketed, one-tenth either in kind or value at the well or mine, at lessee's election, except that on sulphur the royalty shall be fifty cents (50¢) per long ton."

A review of these paragraphs immediately poses the question: If a royalty of 12½% upon all oil and gas is provided for by paragraphs 1, 2 and 3 of this section of the lease, what are the minerals upon which a 10% royalty is payable under paragraph four? Respondent considers the answer to this question a simple one and says that the other minerals are associated hydrocarbons such as methane, ethylene, acetylene, and paraffin. To this list could be added ethane, propane, butane and perhaps many others of the paraffin compounds. These, however, are not other minerals. They are the substances which, either in composition or mixture, make up the oil and gas. They are derived from the crude oil and natural gas by processing either in refineries or natural gasoline plants and no royalty is payable directly upon such products but upon the crude oil or natural gas when it is sold to the processor. This royalty is the 12½% royalty payable under royalty paragraphs 1, 2 and 3. See Magnolia Petroleum Co. v. Connellee, Tex.Com.App., 11 S.W.2d 158. Furthermore, the specific provision for the payment of a royalty upon sulphur clearly indicates that sulphur, which is not a hydrocarbon is included in the general term "all other minerals." The trial court recognized this fact but held that only sulphur recoverable by means of the operation of an oil and gas well was included.

In other words the genus adopted by the trial court in applying the maxim of "ejusdem generis" included only minerals recoverable from an oil well. His decision would exclude from the lease, beds of crystalline sulphur or sulphur compounds which might be discovered in the process of drilling for oil but which could only be mined by other methods. In our view the lease is not subject to so restricted a construction. In Texas, leases, "for the sole

and only purpose of operating for gas and oil and other minerals" are held to include such solid sulphur deposits. Union Sulphur Co. v. Texas Gulf Sulphur Co., Tex.Civ. App., 42 S.W.2d 182; Pabst v. Roxana Petroleum Corp., Tex.Civ.App., 51 S.W.2d 802. It appears therefore that neither the class "hydrocarbons" as suggested by respondent nor the class, minerals "that can be produced in connection with, and as an incident of the production of oil and gas through the means of a well", is a proper limitation to be placed upon the words "all other minerals" in the lease under consideration. If there is a class limitation upon such words it is broader than either of those mentioned, because the class must include sulphur solids which cannot be recovered by the operation of an oil well.

It follows that the trial court's decision, that the words "all other minerals", as used in the lease under consideration, included only minerals that might be produced by the operation of an oil and gas well, was incorrect. In reaching his decision the trial court relied to a great extent upon the case of Praeletorian Diamond Oil Ass'n v. Garvey, Tex.Civ.App., 15 S.W.2d 698. In that case the court based its decision on the fact that the lease, there in controversy, provided royalty payments only for oil, gas and other minerals delivered in pipe lines and tanks. In the lease in that case there apparently was no provision for a royalty at a different rate on all other minerals mined and marketed and for a royalty of fifty cents a ton on sulphur. The case is not in point here.

As has already been stated, we agree with the trial court and the respondent in the conclusion that the primary object of this lease was the development of the demised premises for the production of oil and gas. We are also satisfied that the language of the lease clearly evidences a secondary intent to produce other minerals not associated with, and entirely different from, oil and gas. It is said that such a construction is unreasonable and unconscionable because of the great economic loss the lessor will suffer. It may be said in reply to this statement that it would also be unjust to permit the lessor to reap all of the benefits of a discovery made by the lessee in the course of an expensive exploration for oil. Particularly is this true in a case where no oil was discovered, which in the case of "wild cat" wells would be about ninety percent of the time.

In this case we are not called upon to determine if any specific substance, other than uranium, is, or is not, a mineral granted by the lease. In so far as uranium is concerned it is excluded from the lease by statute since it is not specifically and separately mentioned therein. It is clear, however, that the words "all other minerals" are subject to some limitations and do not include everything that is neither animal nor vegetable. The Mississippi Court in holding that gravel was not a mineral within the terms of a grant suggests that the maxim of "ejusdem generis" should be applied in determining what are other minerals under a lease of oil, gas and other minerals and that the classification should be minerals which are not a part of the soil. Witherspoon v. Campbell, 219 Miss. 640, 69 So.2d 384. To the same effect is Psencik v. Wessels, Tex.Civ.App., 205 S. W.2d 658, 660, wherein it is said: "The term 'legally cognizable as minerals' must therefore be restricted to such minerals and mineral substances as are commonly regarded as minerals as distinguished from the soil in general." In Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994, 1000, in deciding that limestone was not within the terms of a devise in a will, the court said: "This substance * * * has no rare or exceptional character or value, being useful only for building purposes. The limestone, like sand and gravel, is so found as reasonably to be considered a part of the surface rather than part of the mineral estate. Limestone, sand and gravel are removed by quarrying, resulting in the virtual destruction of the surface." This decision suggests that the class of minerals conveyed by a mineral deed is limited to those which are valuable;

are not a part of the soil and may be mined without destroying the surface. To the same effect is Eldridge v. Edmondson, Tex. Civ.App., 252 S.W.2d 605.

It is thus clear that it would be not only impractical, but impossible to attempt to catalogue all the minerals which are, and which are not, included in the grant in the lease under consideration. Decision as to whether any specific mineral is included in the lease must await a case in which an issue as to that mineral is raised.

The respondent also contends that, if the lease in question be interpreted to grant minerals other than those which may be recovered in the operation of an oil and gas well, he is, under the pleadings and the evidence, entitled to reformation of the lease.

Respondent's only pleading in this case is the statutory complaint in an action to determine adverse claims. This complaint requires the defendant to set forth any claims which he may have that are adverse to plaintiff's title and the prayer for relief is that these claims be adjudged null and void. In his answer the defendant set up certain adverse claims and the plaintiff filed no reply setting forth a defense to these claims. Under the provisions of Section 32–1709, NDRC 1943, a reply is unnecessary except in the four instances set forth therein. Under this statute even an affirmative defense to matter set forth in the answer may be urged and proved without the necessity of filing a reply. See Dixon v. Kaufman, 79 N.D. 633, 58 N.W.2d 797, wherein the affirmative defense was fraud. A reply, however, is merely a pleading which sets up new matter as a defense to a counterclaim or other new matter set forth in an answer. Sections 28–0706, 28–0707, NDRC 1943.

It is only the necessity of urging matters of defense against a counterclaim with which Section 32–1709, supra, dispenses. One who seeks relief by reformation is urging much more than a defense

and is asking for greater relief than that the defendant's claims be held null and void. We can see no intimation that the statute abrogates the ordinary rules of pleading, where such a special and extraordinary relief as reformation is sought. There is no question but that the general rule is, that where reformation is sought, the facts which would entitle the pleader to reformation must be pleaded and the relief must be demanded. 76 C.J.S. Reformation of Instruments § 72. In support of his contention that he was entitled to reformation plaintiff has cited the case of Wilson v. Polsfut, 78 N.D. 204, 49 N.W.2d 102. What we held in that case was: that a party was entitled to relief by reformation in a statutory action to determine adverse claims, where the facts entitling the party to reformation were pleaded and reformation was demanded. Clearly, if this case has any bearing here, it is contra the plaintiff's contentions. Under the pleadings in this case the plaintiff is not entitled to a consideration of his informal request for reformation.

This disposes of the issues presented in this case. Our conclusions are that the part of judgment of the district court which decreed that defendant's mineral interest, in the land described in the lease, included only those minerals which could be recovered by the operation of an oil and gas well is reversed; the part of the judgment which decreed that plaintiff had title to the uranium in the land is affirmed.

GRIMSON, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.

On Petition for Rehearing.

BURKE, Judge.

Respondent has filed a vigorous petition for rehearing in which he asserts that, in the opinion filed, we have failed in our statutory duty to determine fully the nature and extent of the parties' interest in the land described in the complaint. He states, "the issue as to the specific minerals, gold, silver, copper, cinnabar, lead and other mineral metals is presented here and now."

If we were to agree with respondent's construction of the lease, to wit: that it granted an interest in gas, oil and associated hydrocarbons only, we could, of course, decide that issue, for such an agreement would, of itself, exclude such metal minerals from the grant in the lease. Also we could reach the same conclusion if we thought there was any persuasiveness or validity in respondent's argument that metal minerals cannot be included in the lease because the lease provides for a royalty on other minerals of one tenth of their value at the mine, and that value of metal minerals can only be determined at the smelter. If the premise of this argument be true and the value of ore cannot be determined by an assay of a sample, it is, nevertheless, obvious that the ore would have a value at the mine and that value would be its value at the smelter less the cost of transportation.

In addition to the lease, the only evidence we have in this case is a stipulation that plaintiff would testify that he owned the land described in the complaint, subject only to an oil and gas lease owned by the defendant and that all minerals except oil and gas and associated hydrocarbons are unencumbered by the lease; and that defendant would testify that he owned a lease of oil, gas and all other minerals in or under the described land and that the words "all other minerals", as used in the lease, included everything that was neither animal nor vegetable.

Construing the lease, we held that both parties were wrong, that is to say: we held that the lease included minerals other than hydrocarbons and did not include everything that was neither animal or vegetable. That is as far as we could go under the evidence in the case.

In all of the reported cases with which we are familiar, (some of which are cited in the opinion filed) the question of whether a specific substance was a mineral within the terms of a grant or lease has not been decided abstractly but upon the basis of the evidence in the case with respect to

the substance in controversy. The statute (section 32-1710, NDRC 1943) which provides that, in an action to determine adverse claims, "The court in its decision shall find the nature and extent of the claim asserted by the various parties" certainly contemplates that the attorneys for the parties will provide sufficient evidence to enable the court to decide the issues they want decided and that the decision of the court will go no farther than the evidence warrants. As to the other matters urged in the petition, we think enough has been said in the opinion filed. The petition is denied.

GRIMSON, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.