Barbara REISS and Harry Reiss, also known as Harry A. Reiss, Plaintiffs-Appellants,

v.

Wm. RUMMEL et al., Defendants-Appellees.

No. 9097.

Supreme Court of North Dakota.

July 9, 1975.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiffs-appellants, argued by John L. Sherman, Dickinson.

Maurice R. Hunke, Dickinson, for defendant-appellee Wm. Rummel.

SAND, Judge.

This is an appeal by plaintiffs from a quiet title action judgment dismissing plaintiffs' claim to certain undivided mineral interests in real property.

The plaintiff Barbara Reiss, and her husband, John Reiss, owned the fee title to 480 acres of land in Dunn County, North Dakota, more particularly described as

The Southeast Quarter (SE–¼) of Section Nine (9); the Southwest Quarter (SW–¼) of Section Ten (10); and the Northwest Quarter (NW–¼) of Section Fifteen (15), all in Township One Hundred Forty-five (145) North, Range Ninety-four (94) West of the Fifth Principal Meridian.

In 1951, the Reisses, the appellants herein, conveyed to William Rummel an undivided one-half interest in and to all of the oil, gas and other minerals in and under said 480 acres by mineral deed, which was recorded in the office of the Dunn County Register of Deeds. No question is raised in the present appeal as to the efficacy of this conveyance.

Twelve days after the recording of said mineral deed, a copy thereof was similarly recorded through inadvertence or mistake, and without the knowledge of the plaintiff Barbara Reiss.

John Reiss died intestate in 1963 and the plaintiff Barbara Reiss was appointed the administratrix of his estate. In 1966, Mrs. Reiss became aware of a potential problem engendered by the mistaken recording of the mineral deed copy, and she and defendant Rummel entered into a memorandum agreement whereby Rummel agreed to correct the potential effect of the recorded copy by conveying the one-half interest in the mineral estate purportedly transferred thereby back to Mrs. Reiss. Mrs. Reiss, apparently in exchange · for Rummel's agreement to execute and record such a deed, and for an additional consideration of one dollar ($1.00) agreed to convey a fifteen-four hundred eightieths (15/480) undivided mineral interest in the 480 acres in question to Rummel.

In early 1967, pursuant to this memorandum agreement, Rummel executed and recorded a deed over to Mrs. Reiss of an undivided two hundred forty-four hundred eightieths (240/480) interest in and to "all the oil, gas, casinghead gas, casinghead gasoline and other minerals in and under [said land]." Shortly thereafter, Mrs. Reiss, individually and as administratrix of her husband's estate, conveyed a fifteen-four hundred eightieths (15/480) interest by mineral deed containing the same language quoted above to John Reich, who then executed a mineral deed containing the same language of grant to Rummel.

Subsequently, Rummel conveyed a ten-four hundred eightieths (10/480) undivided mineral interest to other persons who were not made parties in the present action. Thus, at the time of trial in the court below, the defendant Rummel retained a five-four hundred eightieths (5/480) mineral interest pursuant to mineral deed in the subject property.

In 1973, Mrs. Reiss, as plaintiff, along with her son, Harry Reiss, initiated the instant quiet title action in the Dunn County district court. By her complaint, as far as is pertinent on this appeal, she sought a judicial declaration that the mineral deed copy inadvertently recorded in 1951 was null, void, and of no legal effect, or in the alternative, she sought specific performance as against the defendant William Rummel, so as to require him to execute a further mineral deed in addition to the one exe-

cuted by him in 1967 so as to convey to her the interest in those minerals allegedly requiring specificity in language to effect their conveyance pursuant to Section 47–10–24, North Dakota Century Code.

The plaintiff also sought to rescind or have declared null and void the 1967 transaction whereby she conveyed a fifteen-four hundred eightieths (15/480) interest in the land in question to Rummel, on the ground that there was no consideration for such a transfer and on various other grounds, including fraud, deceit, undue influence and mistake. The defendant William Rummel answered and counterclaimed, asking for reformation of the contract by which the plaintiff conveyed to him a fifteen-four hundred eightieths (15/480) mineral interest in the land in question so as to reflect that such deed conveyed all the mineral interests agreed to be conveyed and received by the appropriate party. Said counterclaim was based upon the ground of mutual mistake.

The trial court, in its findings of fact and conclusions of law, held that the deed copy inadvertently recorded was void and of no legal effect since the law of land transfer is governed by the law of contract and, in the case of the deed copy, there was no contractual intent. Further, the trial court held that the recorded mineral deed executed by Rummel in 1967 was void and of no legal effect. The parties to this appeal do not dispute these findings.

The trial court, however, held that the 1967 transfer of a fifteen-four hundred eightieths (15/480) mineral interest to Rummel was valid. The trial court further held that such transfer conveyed not only "all the oil, gas, casinghead gas, casinghead gasoline . . ." but also that the phrase "all . . . other minerals" in said mineral deed included

". . . coal and uranium, and all other minerals lying in and under the premises described therein. In view of the provisions of North Dakota Century Code 47–10–24, and for the reasons stated in the Memorandum Decision on file herein . . . the Court finds and determines, and the Judgment to be entered herein shall provide, that the term 'minerals' includes coal and uranium and accordingly, by the use of such term 'minerals', the grantors in the conveyances described [i. e., Reiss to Reich and Reich to Rummel] . . . did set forth specifically and separately their intent to convey, among other things, coal and uranium."

■ Plaintiff's notice of appeal from the judgment rendered pursuant to the findings and conclusions limited the plaintiff's appeal to the legal question posed in that part of the trial court's fourth conclusion of law, quoted supra. Plaintiff has set out in the document entitled "Designation of Record on Appeal and Statement of Issue," filed with this court, her position as to the sole issue in this case, as follows:

"That the Trial Court erred in concluding and decreeing that the certain Mineral Deed dated January 17, 1967, in which Barbara Reiss, a widow, individually and as Administratrix of the Estate of John Reiss, Deceased, was grantor, and John Reich was grantee . . . conveyed an interest in coal and uranium in and under the premises therein described, notwithstanding the provisions of Section 47–10–24 of the North Dakota Century Code."

The parties stipulated to the designation of the record on appeal which contained no portion of the testimony adduced at trial, thus the relevant record before us on appeal consists of the pleadings, two exhibits introduced at trial, and the memorandum decision of the trial court, as well as the trial court's findings, conclusions of law, order for judgment, and judgment.

Thus our review is concerned with a question of law in which Rule 52(a), North Dakota Rules of Civil Procedure, does not come into consideration.

Section 47–10–24, N.D.C.C., the construction of which is in issue on the appeal, was

enacted by the North Dakota Legislature as Chapter 235, Session Laws 1955 (codified as Section 47–1024, N.D.R.C.1943, 1957 Supp.) and provided as follows:

"No lease or conveyance of mineral rights or royalties separate from the surface rights in real property in this state shall be construed to grant or convey to the grantee thereof any interest in and to any gravel, coal, clay or uranium unless the intent to convey such interest is specifically and separately set forth in the instrument of lease or conveyance."

In 1957, the Legislature, through Chapter 245, amended and reenacted Chapter 235 of the 1955 Session Laws, by removing any reference to transfer by way of lease in the paragraph quoted above, and adding thereto the following paragraph pertaining to such leases:

"No lease of mineral rights in this state shall be construed as passing any interest to any minerals except those minerals specifically included and set forth by name in the lease. For the purposes of this paragraph any mineral so named shall be deemed to include the by-products of such mineral and in the case of oil and gas, all associated hydrocarbons produced in a liquid or gaseous form so named shall be deemed to be included in the mineral named. The use of the words 'all other minerals' or similar words of an all-inclusive nature in any lease shall not be construed as leasing any minerals except those minerals or their by-products set forth in the lease."

The 1957 statute was in effect at the time of the 1967 conveyance in question. We must now turn to the legislative intent and purpose behind the enactment of that statute.[1] We note first that the portion of the statute relevant to the case before us is the first paragraph thereof, which was enacted in 1955.

There are several factors which might have influenced the 1955 Legislative Session in the matter of the statute in question and many of these factors are subject to judicial notice as matters of common knowledge. As a starting point, we might begin with the fact that commercially valuable and extractable oil deposits were discovered in the western part of North Dakota in 1951.[2] As a result of these oil finds, entrepreneurs (usually in the form of corporate entities) actively solicited and canvassed farmers or landowners to sell, or, in the alternative, to lease some or all of their oil and gas interests and rights in their lands which were primarily used for agricultural purposes. The landowners and farmers were not "peddling" mineral deeds or leases, but rather were sought out. As a result of this activity, mineral estate owners came into being who dealt in mineral deeds and leases, both by buying and selling. Such mineral estate owners did not own the surface estate. The Legislature, however, was concerned with the initial transaction, even though subsequent transactions by the mineral estate owners related back to the original transaction with the landowner. In any event, the primary and best use for the surface of the land was for agricultural (including pasturage) purposes.

This purchasing or leasing of mineral rights or interests in the western part of North Dakota in the early 1950's was oftentimes accomplished by the use of the following language, or some minor variant thereof, to wit: "[Landowner] leases (or conveys) all of the oil, gas, casinghead gas, casinghead gasoline, and other minerals." Given the fact that much of the western one-third of the State is underlain with lignite coal, that the only commercially feasible method of extracting this lignite coal was through the use of strip mining techniques which

---

1. Although the 1969 Legislature amended the second paragraph of the statute dealing with mineral leases, such amendment is not germane to the issue before us at the present time.

2. See 16 Encyclopedia Britannica (1973 ed.) p. 620.

destroyed the surface of the land,[3] and that the Legislature of the State of North Dakota has historically been a body oriented toward the preservation and advancement of agricultural enterprise, it is not surprising to find that the North Dakota Legislature in the mid-1950's was concerned with the possibility that leases or conveyances of mineral interests in agricultural lands for purposes of oil and gas exploration might later, to the chagrin of the agriculturist, be transmuted into a license to exploit the surface estate, with the concomitant destruction of same, through reliance upon the otherwise innocuous phrase, "all other minerals," as a legal license so to do.[4]

Similarly, the plaintiff points out that at the time of passage of the 1955 statute with which we are concerned, coal and uranium were perhaps the only minerals, other than gas and oil, being commercially mined to any appreciable extent in North Dakota and that such coal and uranium were removed exclusively by surface mining techniques, which had the effect of destroying the original agricultural productivity of the surface.[5]

In a Note published in the North Dakota Law Review, the author,[6] in discussing the effect of Section 47–10–24, N.D.C.C., on mineral conveyances, noted:

"In considering mineral severance by deed, we should consider for a moment what minerals are so severed. Instruments of conveyance or of reservation most commonly used in the State of North Dakota refer to 'all oil, gas and other minerals in and under and that may be produced. . . .' Early decisions were concerned with whether the term 'minerals' included oil and gas. The Majority rule is that while the intention of the parties as indicated by a consideration

of the language of the whole instrument must control, the term 'minerals' as used in real property instruments includes oil and gas unless a contrary intention or an ambiguity is manifest by the language of the instrument as a whole. More important at the present time is the question of whether or not the grant of 'oil, gas and other minerals' includes coal.

"Present North Dakota statutory law provides that:

No conveyance of mineral rights or royalties separate from the surface rights in real property in this state, excluding leases, shall be construed to grant or convey to the grantee thereof any interest in and to any gravel, coal, clay or uranium, unless the intent to convey such interest is specifically and separately set forth in the instrument of conveyance. [Section 47–10–24, N.D.C.C.]

Thus the question as to whether or not coal is included in a conveyance of 'minerals' arises only by virtue of instruments dated prior to July 1, 1955."

The certitude evinced by the author of the Note that the failure to mention coal in a post-1955 mineral conveyance (without concurrent conveyance of the surface estate) negated any possibility that coal could be conveyed by a mineral deed through use therein of the phrase "all other minerals," or some similar phraseology, is buttressed by the decision of this court in *MacMaster v. Onstad*, 86 N.W.2d 36 (N.D.1957), which, until the present case arose, was the only case in which this court has had occasion to construe Section 47–10–24, N.D.C.C.

In *MacMaster*, a quiet title action, the plaintiff leased a mineral interest to the defendant by use of a standard form oil and

---

3. See *Christman v. Emineth*, 212 N.W.2d 543 (N.D.1973).

4. Certainly the Legislature had already recognized that coal was a mineral. See *Abbey v. State*, 202 N.W.2d 844 (N.D.1972), at p. 856; also see, *Adams County v. Smith*, 74 N.D. 621, 23 N.W.2d 873 (1946).

5. See also the 1955 Report of the North Dakota Legislative Research Committee, pp. 40–42.

6. Ernest R. Fleck in Note entitled "Severed Mineral Interests" in 51 N.D.L.Rev. 369 (1974).

gas lease which provided in its granting clause, in pertinent part, as follows:

"[The lessor does] lease and let exclusively unto said lessee with the exclusive right of mining, exploring by geophysical and other methods, and operating for and producing therefrom oil, gas, casinghead gas, casinghead gasoline, and all other minerals." 86 N.W.2d 36, at 39.

In *MacMaster* the pertinent question reviewed by this court was what minerals were leased as a result of this clause, most especially, what mineral interests were effectively leased as a result of the use of the phrase "all other minerals." As to the mineral substances for which specificity was required by Chapter 235, Session Laws of 1955, as amended by Chapter 245 of the 1957 Session Laws [codified as Section 47–1024, N.D.R.C.1943 (1957 Supp.)] this court, in *MacMaster*, quoted the 1955 enactment, and then said, at page 40:

"The lease [in the case before us] was executed September 24, 1956, and is therefore governed by these statutory provisions. It follows that the words 'all other minerals', as used therein, do not include gravel, coal, clay or uranium."

Further, in *MacMaster,* at page 42, this court said that:

"In so far as uranium is concerned it is excluded from the lease by statute since it is not specifically and separately mentioned therein."

The defendant in the instant case seeks to distinguish *MacMaster* by pointing out that it involved a lease, whereas the instant case involves a mineral deed. In view of the language employed, the legislative history and the purpose behind Section 47–10–24, N.D.C.C., we fail to see how such a distinction has any merit or validity.

Defendant also seeks to distinguish *Mac-Master* on the basis that the portions thereof quoted above should be considered as dicta because they dealt with a minor issue before the court in that case. As we have indicated above, we characterize the portions of this court's *MacMaster* opinion

quoted above as a necessary holding to the decision in that case.

The defendant in the instant case further argues that this court should look to the language in *MacMaster* construing the meaning of the phrase "all other minerals" in the following manner:

"No word is more inclusive than 'all' and it is difficult to see why, if the parties intended a restricted construction to be placed upon the reference to other minerals, they should use a word so completely unrestricted in its meaning." 86 N.W.2d 36, at 41.

Nevertheless, the court held that such phrase did not include coal in the instrument under consideration. We therefore may not rely upon this statement to conclude that the language in the instrument under consideration included coal.

The defendant also points out that this court, in the cases of *Adams County v. Smith*, 74 N.D. 621, 23 N.W.2d 873 (1946); *Abbey v. State*, 202 N.W.2d 844 (N.D.1972); and *Christman v. Emineth*, 212 N.W.2d 543 (N.D.1973), has construed the phrase "all other minerals" so as to include coal.

None of these three cases, however, dealt with the issue now before us as to whether or not the phrase "all other minerals" is sufficient to convey coal in light of the statutory requirement that coal is not conveyed "unless the intent to convey such interest is specifically and separately set forth in the instrument of lease or conveyance."

After due consideration of the factors surrounding the enactment of the statute in question in 1955 and of the judicial precedent regarding that statute, we hold that, under the facts in this case, the phrase "all other minerals" was insufficient to convey any interest in coal because said phrase does not meet the specific requirements set out by statute.

The defendant urges that a reversal of the trial court's decision would raise a ple-

thora of constitutional issues because Section 47–10–24, N.D.C.C., would also apply to reservations of mineral rights in post-1955 conveyances of a kind similar to that found in the case of *Christman v. Emineth, supra.* The defendant bases this supposition on the language of Section 47–10–24 providing that:

"No conveyance of mineral rights or royalties separate from the surface rights in real property in this state, excluding leases, shall be construed to grant or convey to the grantee unless . . ."

Although this court is not required to discuss the issue raised by the defendant, we feel it appropriate that we should comment thereon in order to elucidate the matter.

As to the nature of a reservation or exception, this court said in *Christman v. Emineth, supra,* 212 N.W.2d at 552:

"The Nebraska Supreme Court has defined a reservation as follows:

'A reservation is some new thing issuing out of what is granted. It creates a new right in the grantor from the subject of the conveyance, something which did not exist as an independent right before the grant and which is originated by it. *Elrod v. Heirs, Devisees, etc.,* 156 Neb. 269, 55 N.W.2d 673, 675 (1952).'

"Although the word 'reservation' is confused with, and used interchangeably with, the word 'exception', some courts have found a material difference between the two words. It has been said that while a reservation is, in effect, a regrant of the thing reserved, an exception operates to take something out of the thing granted which would otherwise pass. 26 C.J.S. Deeds § 137, pp. 993, 995, 996. *Esbjornsson v. Buffalo Insurance Co.,* 252 Minn. 269, 89 N.W.2d 893, 896 (1958)."

Chapter 47–19, N.D.C.C., dealing with the legal effect of recording instruments involving real property and setting forth requirements for recording, defines the term "conveyance," in Section 47–19–42, N.D.C.C., as follows:

"The term 'conveyance' as used in section 47–19–41 shall include every instrument in writing by which any estate or interest in real property · is created, aliened, mortgaged, or encumbered, or by which title to any real property may be affected, except a will or power of attorney." [Underscoring ours.]

Thus, the term "conveyance" has become a word of art for the specific purpose of Section 47–19–41, N.D.C.C., which sets forth the legal effect of filing and also the legal effect of the failure to file instruments and other related items. A reservation comes within the statutory definition for the purposes of Section 47–19–41 and we have so held in *Northwestern Improvement Co. v. Norris,* 74 N.W.2d 497 (N.D. 1955), and in *Northern Pacific Ry. Co. v. Advance Realty Co.,* 78 N.W.2d 705 (N.D. 1956).

However, we do not believe that the statutory definition of the term "conveyance" applies in every instance where such term is used or found in the Century Code. Its application by the very nature of the definition is designed for, if not limited to, Section 47–19–41, N.D.C.C., and to those interrelated sections of Chapter 47–19, N.D. C.C.

Technically, a reservation of minerals in a deed could be considered a conveyance as a grant back to the grantor. In this respect we said in *Christman v. Emineth,* 212 N.W.2d 543, 552:

"Notwithstanding that a distinction has been recognized between a reservation and an exception, it is often difficult to distinguish between an exception and a reservation in a deed. This is so because, in general, a reservation, like an exception, is something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant. Courts have therefore held that the terms are often used interchangeably or indiscriminately

and are not conclusive as to the nature of the provision, and that the technical meaning will give way to the obvious intent, even though the technical term to the contrary was used. 26 C.J.S. Deeds § 137, pp. 996, 997."

As pointed out above, a reservation deducts or holds back something which would otherwise pass. The property which is held back or deducted does not pass, and in this respect it is not a conveyance, except for the grant back theory which appears to be employing hypertechnical legal reasoning, if not legal fiction, because a conveyance is used to accomplish the transfer of property not withheld, and for the purposes of satisfying legal requirements of filing, recording, and other related items. But even so, the property reserved deducted or withheld is not a true conveyance, but a withholding or a retention.

Any further discussion on the technical, refined meaning of the word "conveyance" would not be dispositive of the issue here because we are basically concerned with the intent of the Legislature, as well as the objectives it intended to accomplish. We do not believe that the Legislature had in mind grants back to grantors as reservations, but was primarily concerned with the sale of minerals to persons other than the owner. The term "reservation" had been used by the Legislature in previous legislation, and more specifically in Sections [7] 47–10–21 and 47–10–22, which were in effect at the time Section 47–10–24 was originally enacted. Thus, if the Legislature had in mind to include "reservations" it could easily have accomplished this by merely adding such term to the provisions of Section 47–10–24.[7]

The North Dakota Law Review [8] contains an interesting discussion wherein the author states as follows:

"It should be noted that N.D.Cent.Code § 47–10–24 (Supp.1973), requiring the description and definition of minerals in leases and conveyances, does not mention reservations. A few natural resources lawyers note that a reservation is in fact a grant back to the grantor and that being a grant back it could be entitled a conveyance. It would then therefore follow, they contend, that if a conveyance it would fall within the purview of the statute, but this interpretation does not correspond to what appears to have been the legislative intent at the time of the adoption of the Act. The Legislature was, as indicated by hearings on the bill, concerned with the effect of land owners executing and delivering leases and mineral deeds, and whether or not such documents included uranium ore which was the subject of exploration at that time." [9]

We take note that Section 47–10–24, N.D. C.C., was again amended by Chapter 403 of the 1969 Session Laws imposing additional requirements. This action by the Legislature is consistent with the initial objectives and purposes and is in complete harmony with the legislative intent. We might further add, again, that if the Legislature had in mind to include reservations in the provisions of Section 47–10–24 it could have easily accomplished this.

We are aware that this court in *Christman v. Emineth, supra*, held that Sections 47–10–21 and 47–10–22, N.D.C.C., were unconstitutional because their provisions were unreasonable and invidiously discriminatory.

We recognize a distinction between those statutes and Section 47–10–24, N.D.C.C. The requirements under Sections 47–10–21 and 47–10–22, particularly as to "nature, length, width, and thickness" are impractical, if not impossible (in some or many

---

7. Section 47–10–21 and Section 47–10–22 were declared unconstitutional by this Court on Equal Protection grounds in *Christman v. Emineth, supra.*

8. 51 N.D.L.Rev., *ibid.*, at 377.

9. Our search of the Legislative Council records did not produce any minutes or committee reports on the Bill which enacted Chapter 235 of the 1955 Session Laws, now Section 47–10–24, N.D.C.C.

instances) requirements. In any event, those sections would have cast a heavy, unreasonable burden upon the grantor making a reservation in coal, whereas in the instant case Section 47–10–24 merely requires a deed to specifically set forth the intent to convey coal, which is nothing more than good business practice.

This statute does not impose or demand invidious or unreasonable discriminatory requirements. The Legislature, as we have noted earlier herein, was justifiably concerned with the welfare of the surface owners who were actively solicited to sell or lease their mineral rights. This situation is somewhat akin to the reasons why many legislatures and the Congress have found it appropriate to enact laws providing for the supervision of issue and sale of securities.

We take judicial notice that the instruments (deeds or leases) were generally prepared by the solicitant and the owner was then asked to sign the instrument without having participated in the choice of language employed and was in a situation where he relied heavily upon the representations made by the solicitant. The transaction generally involved only the owner and the solicitant. The opportunity for deception was prevalent. Thus the need for a statute providing for specific requirements was recognized and met.

However, the transactions involving reservations in a deed were and are usually carried out in a different setting or atmosphere. The purchaser and the seller generally discussed the property in question, the terms of the sale, the method of payment, and what was not to be included in the sale. The instrument was then made out accordingly. Such transactions were the result of negotiations and were unlike the transactions where the surface owners were actively solicited to sell or lease their mineral rights. There is a further difference between the two types of transactions. . The purchaser of the surface where a reservation is involved would be concerned about the legal title of the property and other related items, which invariably gave him cause to consult legal counsel, who would advise the purchaser of the legal effect of the language.

Even though a reservation is a conveyance only in a hypertechnical sense, if at all, the difference between reservations, deeds, and leases is substantial, so as to justify different requirements for each.

■ We do not believe that Section 47–10–24, N.D.C.C., violates either Section 20 of the North Dakota Constitution or the Fourteenth Amendment to the United States Constitution. The defendant's concern that the construction we have placed upon this statute would raise a plethora of constitutional issues should now be put at ease.

■ After considering the legislative Act, we believe that the intent of the Legislature in enacting Section 47–10–24 was to limit its application only to those real property transactions where the owner conveyed mineral rights under the circumstances outlined by the statute, and that its provisions do not apply to those transactions where grantors retained mineral rights by reservation or exception. We are convinced that the use of the term "conveyance" as found in Section 47–10–24 has limited meaning and does not take on the meaning of the term as defined in Section 47–19–42, N.D.C.C. The use of the term "conveyance" in Section 47–10–24, N.D.C.C., is for a different purpose and does not have the same meaning as such term has in Section 47–19–42, N.D.C.C.

The defendant has raised other matters upon this appeal but because of the state of the record before us we are precluded from ruling on those matters.

The judgment of the trial court relating to the issue before us is reversed for the reason that the deed transferring the fifteen-four hundred eightieths (15/480) mineral interest did not use language setting forth specifically and separately an intent to convey or include coal, as required by

Section 47–10–24, N.D.C.C., as amended by Chapter 245 of the 1957 Session Laws, and, therefore, the deed did not convey any coal in the described property.

ERICKSTAD, C. J., and VOGEL, PEDERSON and PAULSON, JJ., concur.